The opinion of the Court of Appeals was delivered by
Green, C. J.
On the 2d day of September, 1842, Isaac Staats, the complainant in this cause, conveyed, by deed duly executed, to his daughter Margaret, the wife of Beuben H. Freeman, in fee, ceriain real estate in the county of Somerset. On the same day Staats gave to his son-in-law, the said Beuben H. Freeman, his note for one thousand six hundred dollars, with a warrant of attorney to confess *817 judgment, upon which note judgment was subsequently-entered. To avoid the conveyance and judgment thus made and entered, this bill was filed.
The bill charges that at and before the execution of the deed, the complainant was in the habit of drinking ardent spirits to intoxication. That soon after the second marriage of the complainant, the defendant and his wife insinuated to the complainant and others, that the complainant’s wife was unfaithful to her marriage vows; that her character was bad; and that she would strip the complainant of all his property. That these charges were false and unfounded, and that they were made for the purpose of inducing the complainant to convey his property to the defendant and his wife.
The bill further charges that the deed and note were executed while the complainant was in a state of gross intoxicacation, and with the idea impressed upon his mind by the defendant, that his wife would ruin him. That at the time the papers were executed, the complainant had not power of mind to comprehend their contents and effect; that they were not executed of his own notion and free will, but by the suggestions, compulsion, or contrivance of Freeman and his wife, or one of them.
The material charges of the bill are:
First. That the defendant, at the time of the deed and warrant of attorney was incapable, by reason of extreme intoxication, of making or of assenting to any conveyance.
Second. That the deed, note, and warrant of attorney, were procured by fraud, covin, and misrepresentation.
Both charges are fully, distinctly, and unequivocally denied by the answer. The proof of them rests upon the complainant. The rule of law and the dictates of justice require that they should be clearly proved, and not left to presumption or conjecture.
The case is essentially a question of fact, resting upon the weight of evidence in the cause. It is unnecessary to review if in detail. There are a few facts which are mate *818 rial in weighing the evidence, and which give character to the case.
First. The charge of fraud as made in the bill and as attempted to be established in evidence, rests solely on charges and insinuations made by the defendants against the character of the complainant’s wife, by which the mind of the complainant was influenced against her, and he induced to execute the deed and to give the judgment under an apprehension that his wife would ruin him. Whether these charges are true or false is not very material. There is certainly enough in the evidence to excite and justify the worst fears and suspicion of a husband. But whether true or false it is clearly proved that they originated not with the defendants; but with the complainant himself, not after, but before his marriage, and that his conviction of their truth was so strong as to induce him to charge openly the illegitimacy of the issue of his marriage.
In regard to Mrs. Freeman, the daughter of the complainant, to whom the deed was made, and for whose benefit it chiefly enures, there does not appear to be the shadow of evidence for the charge,^ preferred against her in the complainant’s bill. There is no pretence in the evidence that she ever uttered a charge against the character of Mrs. Staats, or that she participated in any way in the procure-ment of the deed. Her conduct in the painful and trying situation, in which she was placed, so far as appears in evidence, was not only free from all suspicion of fraudulent practice, but from aught inconsistent with filial respect and affection. So far as she is concerned, the charge of fraud preferred in the bill has utterly failed. There is nothing in the evidence as against her to justify a suspicion of fraud practiced or meditated.
In regard to Freeman himself, it is certain that he did not originate the chai'ges against the complainant’s wife, and that he ever repeated them for ,an improper purpose or with a corrupt xnotive, is by no means clear from the evidence. It is shown indeed that they were on one occasion reduced to writing by him; but it does not appear for what purpose *819 that memorandum was made, nor does it even appear, except by the complainant’s own allegation, that it was ever seen by him prior to the execution of the deed. And when it is remembered that charges of the most aggravated character had previously been made by the complainant himself against his wife — that he had previously separated from her and attempted to procure a divorce from her on these very grounds — there would seem no sufficient reason to suppose that the memorandum, at the time it was made, even if seen by him, could have seriously operated upon the defendant’s mind, much loss that it should form the basis of avoiding a solemn conveyance on the ground of fraud and misrepresentation. There is no sufficient evidence to avoid the deed on the ground of fraud or misrepresentation.
Second. It is in evidence that the complainant at and before the execution of the deed was a man of very intemperate habits, and there is evidence in the cause that on the day the deed was executed he was to some extent under the influence of intoxication. In regard to the degree of his mental capacity on that day, there is some conflict in the evidence, and room for a diversity of opinion. Had the idea of the deed originated and been consummated upon that day, there would have been some ground for the charge that the defendant had not power of mind clearly to comprehend the contents and effect of the conveyance.
But the deed was not prepared or executed hastily. The complainant, long before the date of the deed, had applied to' the counsel who was in the habit of attending to his business, to prepare the deed for him. He was advised to reflect upon it. He called again upon his counsel some days before the execution of the deed, and told him that his mind was made up respecting it. A day was appointed for the transaction of the business. Early on the morning of that day he informed a friend of his purpose, and on being advised not to act hastily, replied that he had thought of it and concluded to do it. The papers were even prepared and executed at the defendant’s own house, when surrounded by his family. The deed was read and witnessed by his sister, *820 who testifies to his capacity. The papers were all prepared by and executed under the advice of experienced counsel, who had long known the complainant well, and had been in the habit of transacting his business. The deed was acknowledged before him as a master of the Court of Chancery. Few persons had better opportunity of knowing and judging of the complainant’s mental capacity. No one was called upon so imperatively to judge respecting it. He testifies to the capacity of the complainant. The fact that the deed was executed under his direction, and acknowledged before him as an officer, afford, indeed, the clearest evidence of his estimate of the complainant’s capacity at the time of their execution.
Eight days after the deed was executed, the complainant, in accordance with an arrangement made at the time of its execution, gave directions to have it recorded.
On the seventh of September, five days after the execution of the deed and the giving of the warrant of attorney to confess judgment, the sheriff of the county called to levy the execution issued upon the judgment. On that day the sheriff testifies that he would have been willing to have bought or sold or transacted any ordinary business with the complainant. He showed the sheriff his property, gave it up to him, and appeared to understand perfectly what he was about. The transfer of the complainant’s property on the second of September, 1842 to his daughter and son-in-law, appears by the evidence to have been previously contemplated and deliberately resolved upon; to have been consummated with the knowledge and approbation of his own sister, by the aid of experienced counsel, and to have been subsequently recognized and approved by the complainant himself.
It appears, moreover, that the management of his affairs, and the disposition of his property, had always been in his own hands and under his own control, and that but a few months previous to the execution of the instrument now sought to be avoided, he had conveyed by a lease for ninety- *821 nine years, a part of his real estate, in trust for the purposes of a public school.
The decided weight of evidence, as it appears before this court is that the complainant was not, at the time of the execution of the deed, incapable, by reason of intoxication or otherwise, of comprehending its contents and effect.
Circumstances have since transpired which may render it desirable that the conveyance should have been made upon other conditions and with different provisions. But subsequent events cannot affect the validity or bona ficha of the transaction. At the time of its execution, and under the circumstances in which the testator was placed, the transfer of the property was neither unnatural nor so unreasonable as to raise any presumption against its validity. The conveyance of his real estate was made to his only daughter — the only child of his first wife. It contains ample provision for his own support for life. The dower right of his present wife remains unimpaired. It may well be doubted whether if ho had retained his property under his own control, either he or the children of his second wife would have been in a better pecuniary condition than they now are. The property was placed by the act of the complainant, where the law itself would place it, beyond the reach of his own improvidence.
The circumstance that questions of fact involved in the cause have been passed upon by a jury, constitute no insuperable objection to the interference of this court. The office of a jury in a court of equity is not definitely and finally, as in a court of law, to settle questions of fact, but simply to inform the conscience of the Chancellor, where he has doubt. Hubback on Succession 56. The fact that an issue has been awarded, and the verdict of a jury rendered in the cause upon which the decree of the Chancellor is based, does not take away or limit the control of this court over the decree.
The decree of the Chancellor must be reversed, and the cause remitted to the Court of Chancery, to be proceeded in according to law and to the rules and practice of that court. *822 In pronouncing this decree, it is not the intention of the court to preclude the Chancellor from a further investigation of the facts of the case, either by a jury or in such other mode as he may deem advisable.
Cited in O’Conner v. Rempt, 2 Stew. 156.