JUNE TERM, 1872.

—

THE NEWARK AND NEW YORK RAILROAD COMPANY, appellants, and THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK, respondents.

1. An order of the Chancellor, made at the final hearing, for an issue to be tried by a jury, is appealable.

2. On an appeal from such an order, the court, in its discretion, will decide the entire controversy or send the case back with instructions.

3. If the issue is a simple one and the evidence is defective, the case should not be referred to a jury, but the taking of further evidence ordered.

*Mr. Williamson*, for appellants.

*Mr. W. H. Francis* and *Mr. McCarter*, for respondents.

The opinion of the court was delivered by

THE CHIEF JUSTICE.

In these proceedings the Chancellor, on the final hearing of the cause before him, ordered as follows, viz., "that the parties do proceed to a trial at law at the next Circuit Court, to be holden at Newark, in and for the county of Essex, upon the following issue : whether or not the defendants, by their charter and irrespective of any act or acquiescence of the complainants, had, or had not, lawful authority to locate and construct their railroad as they have done, in Hamilton street, in the city of Newark, and to run engines and cars·thereon."

The issue thus directed embraces, in substance, the gravamen of this controversy, and the question which the appellants have sought to present for the decision of the court is as to the propriety of this order. On the other hand, as a preliminary consideration, the respondents insist that this inquiry cannot be entertained, because, as it is urged by them, an appeal will not lie from an order of the Court of Chancery for an issue to be tried by a jury. This being a jurisdictional objection, calls for primary attention.

This question is one of first impression in this court. I do not find that there ever has been an appeal taken in this state from a decree of this character. But this equitable prerogative of ordering an issue which is undoubtedly legitimate, has, with great propriety, been so sparingly exercised, that it is not at all remarkable that instances of attempts to bring its exercise under appellate supervision are not to be found in our reports. The only judicial reference to this topic, which I have discovered, is in *Black* v. *Lamb*, 1 *Beas.*

113. In the opinion read in that case in the Court of Chancery, it is stated that an appeal will not lie from an order of the court directing an issue, or for refusing one, upon the application of either party, but this was obviously a mere cursory remark, made without any examination of the precedents. The occasion did not present the point distinctly to the mind of the Chancellor, the subject under consideration being the propriety of the order for an issue in that particular case, and the power of the Chancellor over the verdict rendered on the issue; and it was the views expressed on this subject which were approved of by the Chief Justice in his opinion in this same case in this court. 2 *Beas.* 455. I do not understand that there is any intimation in this latter opinion with respect to the order for an issue being appealable or otherwise. There was nothing in the inquiry calling for any consideration of that subject, and any expression of views would have been a mere dictum. Under these circumstances, I consider this question now for the first time to be placed, in this state, before a court in the regular course of decision.

In the absence of modifications arising from statute, or an established course of proceeding, the practice of this court is in conformity with that of the House of Lords. On all unsettled points this is the model to which we recur. With the exceptions just mentioned the established English routine is the law of this court; and such law is as obligatory, until altered by statute, as are any of the general principles of the common law. I think it undeniable, that with the above reservation, every decree or order which could have been appealed to Parliament at the time of the American Revolution, can be appealed to this court. There is nothing in our statute which appears to circumscribe this jurisdiction. Its words are, "all persons aggrieved by any order or decree of the Court of Chancery, may appeal from the same or any part thereof, to the court of Errors and Appeals." I regard this simply as declaratory of the ancient English rule, but it is obvious that the description of the subject embraced is so wide as to require the force of construction to compress it

within such limit. Nor has there been in the decisions of this court any tendency displayed to contract, by virtue of this statutory definition, the boundaries of our jurisdiction. This subject, in relation to this act, was carefully considered by this court, in the case of *The Camden and Amboy Railroad Company* v. *Stewart,* 6 *C. E. Green* 484, and it was there said that it was the legislative intention " to give a wide scope to appeals," and that this appellate jurisdiction over that class of cases to which no established test could be applied, was to be adjudged by the peculiar circumstances of each of such cases. This certainly was no curtailment of the power of this court, so that I think it can be safely said, that this court has never indicated any intention to abandon any part of the authority inherent in its original constitution.

On the foregoing premises the question now presented is not, that I can see, open to the least controversy. The precedents show that, according to the old and clearly established practice in the English courts, an order of the Chancellor, either granting or refusing an issue for a jury, was a subject of appeal. The course of this practice has been uniform, and its propriety has never been, so far as I can learn, judicially criticised or questioned. It is laid down in the text books as an ordinary proceeding. The doctrine is thus explicitly stated by Mr. Daniell, (2 *Ch. Pr.* 1075, *4th Am. ed.*) " Except in cases of an heir-at-law, or of a rector or vicar, who were entitled to issues as a matter of right, the granting of an issue by a court of equity was entirely a matter of discretion in the court, which it would not, however, exercise without due deliberation, and a mistake in the exercise of which was a just ground of appeal; and, therefore, if the court refused an issue, and the Court of Appeals thought that the contrary decision would have been a sounder exercise of discretion, it would rectify the order of the court below accordingly; and so when the House of Lords thought that the court below had directed issues improperly, it reversed the order directing the issues, and remitted the cause with directions to the judge to decide upon the matter him-

self." The cases cited amply authorize this emphatic statement, and these cases are both of ancient and modern date. The line of these precedents is so extended and unbroken that it would be a waste of time to explain or even cite them in detail. I cannot think that any one can refer to these authorities and be left in any doubt upon the subject. The Court of Errors in New York, as originally constituted, and during the period when Chancellor Kent was a member, sustained an appeal from an interlocutory order of the Chancellor for an issue to be tried at law, referring, for authority for such a proceeding, to the practice of the House of Lords. *Le Guen* v. *Gouverneur & Kemble*, 1 *Johns. Cas.* 436. At a period twenty years subsequent, the same Chancellor referred to this decision with evident approval. *Dale* v. *Roosevelt*, 6 *Johns. Ch.* 257. *Bush* v. *Livingston & Townsend*, 2 *Caines Cas. in Err.* 66, stands in the same train of cases. That a different rule, since the uncertainty introduced by the Code of Procedure, has been adopted in New York, as appears from the case of *Candee* v. *Lord*, 2 *Comst.* 269, seems to me aside from the purpose. That decision does not purport to rest on any ancient practice, nor are the cases just cited even referred to. As it is clear that an appeal will lie to Parliament from an order for a trial by jury, it necessarily follows, as I think, that an appeal will lie from an order of the same kind to this court. The jurisdictional objection to this appeal is not well taken.

The next question to be decided grows out of the contention of the counsel of the appellants, that this court, on this appeal, will not only look into the question as to the propriety of the order for an issue, but will also look at the whole case, and, in the event of finding the ground for a final decision, will proceed to dispose of the entire controversy. The position taken is this, that the bill of the complainants, who are the respondents here, contains no equity, or that, if it does, such equity has been lost by their laches.

The Chancellor, as appears from the recital in the order for the issue, decided that the claim in the bill was equitable,

and that it had not been lost. These were preliminary matters, for it is obvious that unless the complainants had this standing in court, the order for a trial would have been frivolous. It is, therefore, now asked, if this court shall be of opinion that, on the facts of the whole case, it is demonstrably clear that the complainants have no equity which can be enforced, why final judgment should not be pronounced. The counsel for the respondents deny the power of the court to render such final decree on this appeal.

But this latter view cannot be sustained. Again, a jurisdictional question is raised and is to be settled by the precedents, and such precedents are all in favor of the power to render a final decree. The general rule is that the appellate tribunal will render such judgment as the inferior court, under all the circumstances, should have given, and this rule has always obtained, in full force, in cases of appeal from decrees for issues of fact. *White et al.* v. *Lightburne*, 2 *Brown. P. C.* 405, affords an illustration of this practice. The gravamen of this case was the bona fides of an article of agreement, which was averred to have been obtained by fraud and without fair consideration. The Chancellor, at the final hearing, ordered a feigned issue. On an appeal to Parliament this order was set aside, and a final decree substituted annulling the article of agreement as fraudulent. The date of this precedent is 1722.

Three years later occurred the case of *Rous* v. *Barker*, 3 *Brown. P. C.* 180. The dispute grew out of the uncertainty as to the location of certain copyhold lands, and the lord of the manor filed his bill to have a commission appointed to make the requisite ascertainment. The court refused this prayer, and referred the question to a jury. This was at final hearing; and, on appeal, this decree was reversed, and a commission was ordered. The principle in both of these cases is the same, and it should be remarked that in the first one the point was distinctly taken by the counsel of the respondents, that an order for an issue "was but the ordinary justice of a court of equity, and that there was not the least

color for appealing from such a decree." In both these instances the appellate court acted on the general principle above stated, and rendered the judgment which the subordinate court should have rendered.

This question was largely discussed and considered, and was finally decided, in the case already cited on the first point, of *Le Guen* v. *Gouverneur & Kemble*, 1 *Johns. Cas. in Err.* This case was one which presented, with much prominence, the propriety of the existence of this power in the appellate tribunal. The bill was to set aside a judgment on the ground of fraud, and the Chancellor directed an issue of fact. The court, on appeal, came to the conclusion that such fraud, even if shown, would constitute no defence to the judgment. The position, therefore, was, that on the admitted facts the complainant had no equity, and, under such conviction in the superior court, it appeared to be an idle form to remit the case for the inconclusive judgment of the subordinate court. The result was the conclusion that the power existed for the appellate court to proceed to final judgment. This course was taken after a full examination of the English authorities.

It need hardly be observed that the superior court is under no constraint to conclude the case by its own action. Whenever such course, under any given state of facts, seems preferable, a decree will be made sending the matter for final decision to the court below. There are a number of recent instances of such a course of proceeding. *Nicol* v. *Vaughan*, 2 *Dow & Clark* 420 ; *S. C.*, 5 *Bligh's Appeals* 505 ; *Earl of Winchilsea* v. *Garretty*, 1 *M. & K.* 253.

In view of these authorities, I can entertain no uncertain opinion with regard to the power of this court to deal with the present case on its merits. How far it is proper, as the proofs stand, for the court so to do, is the only question for consideration.

It seems to me that this court should pass upon the question as to the equity of the bill, and the alleged loss of that equity, if such existed, by the respondents ; for if we concur,

in either of these heads, with the views of the appellants, it would be quite idle to remit the case to the Chancellor, who has already come to a contrary result. Under such circumstances, we would send the case down for a formal decision, which we would reverse as soon as the proceedings, in due routine, should be returned to this court. It is obvious that the Chancellor could not have made an order for an issue without deciding both these points in favor of the respondent: it is equally obvious that this court cannot pass upon the propriety of the same order without, antecedently, deciding the same points. In my judgment, the questions, therefore, are to be answered by this court. Does the bill in this case disclose any equity? and if so, has such equity been forfeited by the acquiescence of the respondent?

The Chancellor responded to the former of these questions in the affirmative and to the latter in the negative, and in both these responses I entirely concur.

As I consider these matters quite plain, I shall dispose of them in a few words.

The solid standing of the complainants in the Court of Chancery consists, I think, in this: they show that they represent the municipality, having the care and charge of the public streets of the city, and they allege that the defendants tore up the pavements, and laid down and constructed "through the entire length of the said section of Hamilton street, lying between Mulberry street and Lawrence street, and diagonally over the same from northeast to southwest, a portion of their railroad, being a double track railway, occupying a strip of almost fifteen feet in width, and with the overhangings of their cars used by them on said tracks occupying a strip of about twenty-one feet; and subsequently, they allege "that there was no necessity for the construction of their road in the manner aforesaid, in crossing Hamilton street, nor was it reasonably necessary that the defendants should lay their double track railway so as to infringe upon Hamilton street at so acute an angle." In these averments I find a substantial equity. The defendants have

clearly no right to occupy for their road any portion of the public streets of the city of Newark, except to the extent of a reasonable necessity. Upon the argument before this court it was not urged in their behalf that their franchise had a wider scope than this. The consequence is that this charge that they have subjected to their use a larger portion of the public street than is reasonable, exhibits a *prima facia* case for the action of a court of equity. Almost the entire residue of this bill, with the exception of its formal parts, appears to me to be superfluous. But the averment of the unnecessary occupation of this public street gives the respondents a sufficient standing in court.

With regard to the second objection, I do not think the proofs present a conjuncture to which the doctrine of acquiescence should be applied. Indeed I am not prepared to say that the principle should ever be interposed to bar the rights of a public corporation. I am not aware that this particular has received the attention of the courts, but many reasons suggest themselves why the doctrine should not be deemed applicable to that class of cases. As a general rule, the public at large does not lose its rights by the inattention of its agents, and hence the maxim, *nullum tempus occurrit regi.* There seems to be no reason why this same principle should not be held to protect the inhabitants of a city. The officers of a city cannot, by express sanction, legalize the placing of a nuisance in a public street, and it does not seem possible to give a greater effect to their negligent inaction. At all events the doctrine of the forfeiture of equitable rights by the laches of municipal officials should be restricted to the narrowest bounds, and should be applied only in cases of the grossest neglect and which have materially affected the conduct of the party complained against. To some extent this limitation of the rule has been declared to exist even in the case of a private corporation, for in the case of the *Curriers' Company,* 2. *Dr. & Sm.* 355, it was said that although a corporation may be bound by acquiescence, as well as an individual, yet the rules respecting acquiescence which apply to

an individual, do not apply with the same strictness to a corporate body.

The facts before the court will not place the present case within the control of this restricted principle. It is true that ordinances were passed to accommodate the grade of these streets to that of the railroad, but as the railroad track had necessarily to cross these streets, such regulations were proper, at whatever angle over Hamilton street the track was to be laid. It does not appear that the attention of the officers of the city was distinctly or specially directed to the extent to which the appellants designed to occupy this street, and in the absence of explicit proof to this effect, I think there is no ground to charge the corporate body with acquiescence in the act. These proofs may have been sufficient to disentitle the respondents to an interlocutory injunction, but it is entirely too slender to deprive them of their equitable rights on the final hearing. This ground of defence was rightly overruled. The question which remains relates to the order of the Chancellor directing an issue to be tried by a jury.

I think this court should not interfere with such orders without great caution. In cases of complex and intricate facts, involving a detail of circumstances and requiring the testimony of numerous witnesses, the mode of trial directed in this decree is often convenient and sometimes almost indispensable. The purpose of the proceeding is to assist the Chancellor in the formation of an opinion. On all occasions of doubt and real difficulty, the Chancellor has the right to the advice of a verdict, and this privilege, at such times, could not be properly refused. But it is also apparent that the parties to a suit in Chancery should not be put to the delay and expense of a trial at law, unless the result of such trial is likely to have a weighty influence in the decision of the controversy. And it is this consideration which appears to me to raise up an insuperable objection to the present order. After a careful consideration, I have entirely failed to perceive how the opinion of a jury on the present issue

could help or sensibly affect the judgment of the Court of Chancery. The only issue to be decided is, whether the road of the appellants cuts Hamilton street at too acute an angle. There is nothing else in dispute. The pleadings do not raise any other issue. It is not denied that the appellants' road, with respect to its general course, has been properly located, or that it can legitimately be laid across Hamilton street. On the part of the city, it is said that, by making a slight curve, this track can be carried over this street so as to occupy not more than seventy feet of it; on the part of the company, the contention is that this is not practicable, and that it is necessary to appropriate for this use over four hundred feet of this street. This is the knot to be untied. Can it be said that a jury is requisite to assist in the labor? The problem is certainly a simple one, and I have been unable to persuade myself that a trial at law is necessary for its solution.

But while I am compelled to deny the necessity for an issue, I can readily understand why the Chancellor should have hesitated to decide this point on the evidence as it now stands. There are only two affidavits which relate to this issue, the one being that of the city surveyor, and the other that of the surveyor of the railroad company. The one avers that the track can be laid so as to cross the street without occupying a third of the present space; the other controverts this allegation. Neither witness was cross-examined, so that we have but little more than an affirmation on the one side and a denial on the other. The question belongs to the science of engineering, and the examination of a few experts will put the matter at rest. But a defect of evidence of this character does not give rise to any necessity for a trial at law. The omission of the necessary proofs can be supplied by the order of the court. This is, and always has been, one of the powers of a court of equity. The practice is so ancient that it is referred to in two of the notes of *Cay's Reports, pp.* 37 and 83. " An equity judge," says Mr. Gresley, (*Ev.* 489,) "has this most material advantage over the com-

mon law tribunal, that he is not bound to pronounce his decision at once, immediately after the trial. He may not only postpone his judgment, but if he finds the evidence unsatisfactory or defective, and is unable to elucidate the subject from his own resources, he may call for further information."

I think the order for a trial at law should be vacated, and an order made that further testimony be taken on the single question, whether, with a reasonable regard for the rights of the city of Newark, and of those of the appellants, the railroad track has been properly laid in Hamilton street, and if not, what alteration should be made at that point.

For vacating the order—BEASLEY, C. J., DALRIMPLE, DEPUE, LATHROP, OGDEN, OLDEN, SCUDDER, VAN SYCKEL, WALES, WOODHULL.    10.