CARPENTER vs. THE EASTON AND AMBOY RAILROAD COMPANY.

1. Where, after compensation has been made for damages, as well as for the value of the land condemned, by a railroad company, the company threaten, not to take more land, but, by a change in the mode of construction of their road across the land (a change from a bridge resting on piers to an embankment, not contemplated when the land was condemned), to deprive the complainant of a lane through his farm, and the company are restrained from obstructing the lane until they make compensation therefor, but are afterwards permitted to do the threatened injury on securing to the complainant an indemnity which should be satisfactory to this court, the amount of damages is a matter of equitable consideration only.

2. Where, in such case, an issue is framed by order of the court, to submit the question as to the amount of damages, to a jury, the object of the issue is merely to inform the conscience of the court as to the amount of

Carpenter *v.* Easton and Amboy R. R. Co.

compensation which, in equity, should be required to be made; and the verdict will be disregarded, if deemed unwarranted, and the amount of compensation determined by this court, in its discretion.

3. In such a case, the damages resulting from the deprivation of the lane, are the only consideration for the jury. That is the only injury for which the railroad company must answer. The injury to the complainant's farm, apart from this, from the existence of the embankment, is entirely foreign to the question.

On motion to set aside verdict on feigned issue.

*Mr. J. G. Shipman* and *Mr. T. N. McCarter*, for the motion.

*Mr. J. M. Robeson* and *Mr. J. Vanatta*, contra.

THE CHANCELLOR.

The bill in this cause was filed to restrain the defendants from obstructing a lane on the complainant's farm.

The defendants had, under their charter, taken, by condemnation, for the purposes of their railroad, a strip crossing the farm, and therefore separating it into two parts. They had made compensation for the value of the land taken, and the damages. An unanticipated change in the mode of construction of the railroad across the complainant's premises—a change from a bridge resting on piers, and which would not have interfered with the use, by the complainant, of the lane, by which he was accustomed, conveniently, to reach the various fields of his farm, to an embankment,—threatened to deprive him of his lane. Under those circumstances, he applied to this court for relief in the premises, which was accorded to him, and the defendants were restrained from obstructing the lane until they should have made the complainant compensation in the premises. In order to ascertain the amount of the compensation which they should be required to make, it was referred to the commissioners who, by appointment under the defendants' charter, had appraised the value of his land taken and his damages in respect to

the condemnation. *Carpenter* v. *E. & A. R. R. Co.*, 9 *C. E. Green* 250. The commissioners reported the sum of $S467.50 as the amount of the complainant's damages for closing the lane. For reasons satisfactory to the court, that report was not confirmed, and the award was disapproved. *Carpenter* v. *E. & A. R. R. Co.*, 9 *C. E. Green* 408. An order was then made, that an issue be framed to submit the question as to the amount of damages to which the complainant is entitled, to a jury, and on the defendants' paying into this court the amount of the award to answer the complainant's damages, and undertaking to try the issue at the then next Warren Circuit, the injunction was dissolved. The issue was tried accordingly, and the result was a verdict of $9000 damages. The jury were directed by the Chief Justice, before whom the issue was tried, to find which of two routes for a way, in substitution of that of which the complainant had been deprived, one wholly on his own land and the other partly on land belonging to the company, but intended for use as a public highway, was preferable. They found, accordingly, that the way should be located on the first named route (called the upper route,) at grade. On the defendants' application, an order to show cause why the verdict should not be set aside, was granted. The report of the trial, with the certificate of the Chief Justice, was duly filed. By the latter, it appears that the verdict was, in the opinion of the Chief Justice, for a sum larger than was warranted by the evidence, and that he has never been entirely satisfied with it.

The verdict is quite as unsatisfactory as the award of the commissioners. The principle on which it was found is not so manifest as was that on which the award was based, but it is evident that considerations not legitimate to the issue, entered into it and swelled its amount. The complainant's farm contains one hundred and fifty-six acres. His witnesses value it at $150 an acre. The defendants' witnesses, who speak on that subject, value it at from $130 to $140 an acre. After deducting from its value, at the price fixed by his own witnesses, the amount requisite to construct for him the new

way mentioned in the verdict (which would be by far the most expensive of the two,) with the cost of fencing it and keeping the fence in repair, there will remain a sum of over $7000 for the complainant's damages alone, a sum nearly equal to one-third of the whole value of the farm. The jury, manifestly, have not considered the question submitted to them on this score, without being influenced, as they perhaps naturally would be, by considerations of the injury to the complainant's farm, arising from the existence of the embankment for the railroad track. Such considerations, however, are obviously entirely foreign to the question. The company acquired the complainant's land for their road, and made compensation for it before the bill was filed. When the complainant came into this court for relief, they did not threaten or propose to take any more of the complainant's land than that which had been duly condemned under their charter. They did propose, however, to deprive him of a way over his land, which, during the proceedings for condemnation, they had led him to believe would in no wise be affected by their occupation of the land condemned. For this threatened injury, which this court permitted them to do on their securing to the complainant an indemnity which should be satisfactory to this court, they must answer in damages, and for this injury alone. It is a matter of equitable consideration only. The object of the reference to the commissioners and of the issue, was merely to inform the conscience of the court as to the amount of compensation which the defendants should, in equity, be required to make, under the circumstances.

After a careful consideration of the evidence, I am unwilling to accept the verdict as a guide. It appears to me to be very clear that what on the trial is called the lower route, is by far the more desirable, and that if that route be adopted, the damage to the complainant, for the loss of his lane, would not be very great. The objection made to it is, that the way which would be thus provided, would not be wholly on the complainant's land, and that for a very con-

siderable distance it would be along the public highway, which would be less convenient to him, because it would render it necessary to send a person with his cattle, to take charge of them, when driven to and from the field, and because the road is, at that place, liable to inundation from the creek along which it runs. The first objection does not appear to possess much weight. The title to the land, on which the highway over which the way would be is, is in the defendants, who propose to dedicate it to the public use, if, indeed, they have not already done so, but whether they have so dedicated it or not, they propose to secure to the complainant a way over it in place of that of which they have deprived him. One of the bridges across the creek would be wholly on the defendants' land, and part of the other would be on their land, also. The liability to inundation does not appear to be great. The complainant's brother testifies that he has lived all his life in that neighborhood, and can recollect no more than four or five times, in forty years, when the water of the creek rose above the level of the proposed road. This objection does not appear to be entitled to much consideration. The complainant should be permitted to choose between the upper and lower routes, as designated and described at the trial, and the defendants should be required to provide for him the one which he may select; the construction of the upper one, if that be selected, to be according to the plan detailed by the civil engineer, Wire, sworn in behalf of the complainant, on the trial. Should he select the lower one, they should be required to build proper bridges and keep them in repair forever. If he chooses the upper one, they should be required to construct the road and to fence it, but not to maintain the fence. For his damages, in either case, $5000 will, in my judgment, be ample compensation. There will be a decree in accordance with these views.