148 N.J. Super. 382 (1977)
372 A.2d 1105
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ALEX SMOLLOK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 17, 1977.
Decided February 22, 1977.
*383 Before Judges CARTON, KOLE and LARNER.
Mr. Miles Feinstein, attorney for appellant.
Mr. William F. Hyland, Attorney General of New Jersey, attorney for respondent (Mr. Wayne J. Martorelli, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by CARTON, P.J.A.D.
Following a jury trial defendant was convicted on an indictment charging him with bribery in nine separate counts. A charge of misconduct in office was dismissed by the trial judge prior to submission of the case to the jury, on the ground that this charge merged into the individual bribery charges.
Defendant appeals on the ground that the judge abused discretion in admitting into evidence various cash deposits made by him in the period during which the various alleged bribe episodes took place.
The State's proofs showed that defendant Smollok served as board secretary and business manager of the Passaic *384 County Vocational and Technical School from 1968 to 1973. The State's main witness was a Joseph Carrara, who was, during this five-year period, the president of Caljo Contractors Supply Corporation, and who testified pursuant to an order granting him use immunity.
Carrara related that during a series of meetings in 1968 he and Smollok arranged a kickback scheme in which Smollok would obtain "commission" payments worth approximately 5% of all contracts awarded by the Passaic County Vocational School. Carrara and Smollok began the kickback system in 1968 with the retention of a civil engineer, a Mr. Odell, to supervise the construction of the vocational school building. Carrara obtained the services of Odell for the school project and required Odell to pay him a commission equalling 10% of the value of Odell's monthly bills to the school. During a one-year period Odell paid a total of $18,000 to Carrara, in both cash and check form, and Carrara in turn paid half, or about $9,000, to defendant. According to Carrara, this scheme, with variations, was followed with numerous contractors and suppliers of the school system from 1968 until Caljo ceased doing business with the school in late 1972 or early 1973.
The State also produced a number of witnesses who had represented suppliers and who testified in detail concerning their dealings with Carrara, essentially substantiating Carrara's description of the so-called "commission" system. In general, although the details of their descriptions varied somewhat, the transactions were all either initially solicited by Carrara or were eventually referred to him by defendant after the suppliers made inquiries to defendant about selling their products to the school.
Over defendant's objection the State introduced testimony of a bank official who testified from bank records that defendant and his wife had opened a personal checking account with the bank in June 1970 and had deposited various large sums in the account between May 26, 1972 and January 11, *385 1973. These consisted of the following: May 26, 1972  $2,027.15, of which $2,000 was cash; May 30, 1972  $3,074.55, of which $2,500 was cash; July 31, 1972  $5,000 in cash; January 3, 1973  $4,000 in cash, and January 11, 1973  $12,000, of which $5,000 was cash.
On defendant's case he denied any involvement in the alleged bribes. He also introduced the testimony of the representatives of a variety of suppliers to the school to the effect that they had never made kickbacks. They also denied that defendant ever asked for such payment. In addition, defendant introduced testimony as to the school's office and business procedures. A number of character witnesses testified to defendant's excellent reputation.
Defendant's explanation of the cash deposits introduced by the State was that they reflected legitimate income from his private business, the Smollok Electric Company, repayment of debts owed to him by friends, inheritance monies from his cousin's and mother-in-law's estates, transfers of monies from his various savings accounts, and monies that he borrowed from various sources, including monies borrowed from the school board attorney.
In ruling that the evidence of cash deposits was admissible, the trial judge relied upon State v. Schuck, 96 N.J.L. 154 (E. & A. 1921). Schuck involved the conviction of defendant Schuck for first degree murder. At trial there was evidence that a large sum of money had been taken from the victim, and that the initial motive for the crime was robbery. The trial judge admitted the testimony of two witnesses who observed defendant and his accomplices in Philadelphia "spending money and carousing with girls * * *." 96 N.J.L. at 156. The Court of Errors and Appeals held, on appeal, that the admission of this testimony was proper because it raised the permissible inference that defendant had obtained the money from the deceased, and was therefore relevant. 96 N.J.L. at 156.
*386 The Schuck decision is not precisely apposite to this case but presented an analogous evidence question. The court in that case does appear to approve the rule, accepted by the majority of United States jurisdictions, which permits the introduction of evidence of sudden acquisition or improvement in financial condition by an accused in prosecutions for crimes which naturally and ordinarily result in the acquisition of money, even though the source of the money has not been traced by the prosecution, when there is other evidence of defendant's guilt. See United States v. Crisp, 435 F.2d 354, 360 (7 Cir.1971), cert. den. 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 116 (1971); United States v. Brewer, 427 F.2d 409, 411 (10 Cir.1970); United States v. Jackskion, 102 F.2d 683, 684 (2 Cir.1939), cert. den. 307 U.S. 635, 59 S.Ct. 1032, 83 L.Ed. 1517 (1939); State v. Nevius, 147 Ohio St. 263, 71 N.E.2d 258 (Sup. Ct. 1947), cert. den. 331 U.S. 839, 67 S.Ct. 1521, 91 L.Ed. 1851 (1947); 29 Am. Jur.2d, Evidence, § 291; Annotation, 91 A.L.R.2d 1046, 1048. Both United States v. Jackskion and State v. Nevius, supra, apply this rule in factual situations quite similar to the facts of this case.
We are satisfied that the trial judge acted properly in his ruling. We note that the deposits were very substantial in amount and included sizable sums of cash in round numbers. Such deposits were made during a very brief period, at a time when defendant occupied the office of secretary and business manager, and during the period that he was allegedly receiving large sums from the various contractors. Under these circumstances, and in light of defendant's limited salary as secretary and business manager, evidence of such deposits was highly relevant to the bribery issue.
Nor do we perceive any merit to defendant's secondary argument that even if evidence of cash deposits may be generally admissible in criminal prosecutions for crimes such as bribery, the evidence was improperly introduced because of the lack of a proper foundation laid for its introduction. While some jurisdictions may require a showing of the accused's *387 impecuniousness as a prerequisite to the introduction of such evidence when the money has not been traced, we think the better rule is that such a foundation requirement should not be imposed upon the prosecution. Rather, as other jurisdictions hold, such proof is relevant to the weight and value of evidence of unusual expenditures or acquisition of money by an accused. See, e.g., United States v. Higgans, 507 F.2d 808, 812-13 (7 Cir.1974); United States v. Falley, 489 F.2d 33, 39 (2 Cir.1973); United States v. Goldenstein, 456 F.2d 1006, 1011 (8 Cir.1972); United States v. Mirenda, 443 F.2d 1351, 1357 (9 Cir.1971), cert. den. 404 U.S. 966, 92 S.Ct. 343, 30 L.Ed.2d 286 (1971); State v. Young, 30 Utah 2d 280, 516 P.2d 1398 (Sup. Ct. 1973); State v. Heidelbach, 49 Wis.2d 350, 182 N.W.2d 497, 501 (Sup. Ct. 1971). Defendant in such case may, of course, as defendant did in this case, attempt to explain the source of the deposits. Resolution of the issue, of course, is a matter for the jury.
Defendant's further argument, that the trial judge abused discretion under Evid. R. 4 by failing to exclude evidence because it was highly prejudicial to the defense, is frivolous.
We see no merit to the other points advanced by defendant.
Affirmed.