152 N.J. Super. 569 (1977)
378 A.2d 260
WILLIAM F. HYLAND, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, PLAINTIFFS,
v.
LEONARD W. SIMMONS, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided August 26, 1977.
*572 Mr. Steven B. Sacharow for plaintiff (Mr. William F. Hyland, Attorney General, attorney).
Mr. Calvin J. Hurd for defendant.
DREIER, J.C.C., Temporarily Assigned.
This case presents novel issues respecting the remedies available to representatives of the public against officials alleged to have violated the public trust, here by accepting illicit payments in return for the exercise of corrupt influence in the course of official duties.
The complaint, filed by the Union County Prosecutor and the Attorney General as coplaintiffs, alleged that defendant, while councilman of the Borough of Roselle, "did demand, solicit and receive the sum of $10,000" from individuals acting on behalf of the Jersey Laminating & Finishing Company and its successor, Chelsea Industries, Inc. (hereinafter "Jersey Laminating") in return for the exercise of his influence respecting a zoning variance in which these companies had a direct interest. The payments were allegedly made to defendant in four installments, beginning in December 1968 and ending in April 1969. The relief sought was the imposition of a constructive trust in the amount of the alleged bribes, and punitive damages.
At the trial the principal witnesses against defendant were Miki Berger and Gerald Laurence. Berger was the principal of Jersey Laminating and Laurence was the principal of a contractor which had constructed several buildings for Jersey Laminating, and was to construct a new warehouse if the disputed variance could be obtained. Both freely admitted making the payments to defendant. The money was initially advanced by Laurence to Berger, and was repaid by Berger's *573 authorization of excessive progress payments on a construction project then underway. Vivid descriptions were given by the two witnesses of three payments made directly to defendant at his dry cleaning establishment, and one payment made by leaving an envelope containing money in the pocket of a jacket delivered personally to defendant ostensibly for cleaning.
The testimony of these witnesses was corrobroated by photostatic copies of certain dated receipts from Berger to Laurence for "loans" in the amount of each payment. Although there were certain discrepancies in the testimony of the two witnesses as to the dates these receipts were given, the overall effect of their testimony was devastating to defendant.
The dates and amounts of the payments were: December 13, 1968, $2,000; March 26, 1969, $3,000; April 3, 1969, $3,000, and April 25 1969, $2,000. Plaintiff introduced for additional corroboration certain bank records of defendant. On January 20, 1969 defendant deposited $1,800 to his business bank account; on April 9, 1969 defendant opened a safe deposit box, and on the latter date he also opened a savings account in the amount of $2,900. This savings account was not disclosed to plaintiff during discovery, nor was the interest from this account reported on defendant's tax returns. There is a further record that six days after the fourth payment, on May 1, 1969, defendant visited the safe deposit box, although, of course, there is no record of what transpired. Also, a few days after a later visit to the safe deposit box, defendant on October 29, 1969 deposited $1,200 in cash into his business bank account. The deposits of $1,800 and $1,200 were by far the largest deposits ever made in defendant's bank account during the period in question. During the jury trial defendant could offer no explanation of either deposit, although, as noted later in this opinion, a fully credible and innocent explanation of the $1,800 deposit was later offered by defendant and accepted by the court.
Defendant denied the occurrences, including all meetings with the witnesses, and presented extensive character evidence *574 concerning a career of dedicated public service. The court, after receiving an advisory verdict from the jury, the use of which is explained hereafter, entered a compensatory judgment against defendant in the sum of $10,000 and, after taking further testimony, entered a punitive award against defendant in the additional sum of $10,000.
Defendant now moves, first to reopen the judgment (R. 4:49-1), and second, to be relieved from the judgment (R. 4:50-1). The court was urged at oral argument to exercise its prerogative under R. 4:49-1 to "open the judgment if one has been entered, * * * amend findings of facts and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment." These motions, therefore, necessitate a brief recitation of certain pretrial and trial dispositions.
On motion of defendant the court struck the Union County Prosecutor as a plaintiff in the action inasmuch as it was clear that he had not pursued the cause (although an assistant prosecutor assisted the Deputy Attorney General throughout the trial). In an action of this type the Attorney General has the inherent authority to maintain the suit as a defender of the public interest. Public Service Coor. Transport v. State, 5 N.J. 196, 208-209 (1950). It cannot be seriously disputed that the public has an interest here which is in need of adequate representation, but the prosecutor was an unnecessary party plaintiff. His presence, however, in no way prejudiced defendant.
Defendant also moved for a dismissal based upon the running of the statute of limitations. Defendant's theory was and is that the conduct attributed to defendant was framed in the language of N.J.S.A. 2A:93-4 and 2A:93-6, and therefore the action was in reality one for a forfeiture, governed by the limitation periods set forth in N.J.S.A. 2A: 14-10. This act provides that:
All actions at law brought for any forfeiture upon any penal statute made or to be made, shall be commenced within the periods of time prescribed: * * *. *575 The statute then recites four periods of time for the commencement of such actions, depending upon whether the recovery is limited to the State or to other entities. The maximum time permitted under any provision is two years.
The argument misconceives the nature of the remedy pursued by plaintiff. N.J.S.A. 2A:14-10 is expressly confined to forfeitures upon a penal statute and, although the language of the complaint is framed in terms similar to certain penal statutes, the resemblance goes no further. Plaintiff's action is for the imposition of a constructive trust grounded in the equitable principle that one should not be permitted to profit from his own wrongdoing. Whenever title to property is acquired by fraud, duress or undue influence, or is acquired or retained in violation of a fiduciary duty, a constructive trust may be impressed in appropriate circumstances. D'Ippolito v. Castoro, 51 N.J. 584, 588 (1968); Hirsch v. Travelers Ins. Co., 134 N.J. Super. 466, 470 (App. Div. 1975). There is no statute authorizing the suit in this instance.[1] Rather, the remedy is one conceived of by common law and endorsed by our Supreme Court in Driscoll v. Burlington Bridge Commission, 8 N.J. 433 (1952):
The citizen is not at the mercy of his servants holding positions of public trust nor is he helpless to secure relief from their machinations except through the medium of the ballot, the pressure of public opinion or criminal prosecution. He may secure relief in the civil courts either through an action brought in his own name * * * or through proceedings instituted on his behalf by the Governor, * * * or by the Attorney General.

* * *
That the shortcomings of some public officers may not make them accountable in our criminal courts does not mean that their nefarious acts cannot be successfully attacked through the processes of the civil law. [at 476]
*576 See also, Jersey City v. Hague, 18 N.J. 584, 597 (1955); Restatement, Restitution, § 197, Comment (a). The above authorities establish clearly that the instant cause of action is independent from any past criminal proceeding against defendant, regardless of its outcome.
It is well established that since this is a purely equitable action,[2] the general statute of limitations is not applicable. Colton v. Depew, 60 N.J. Eq. 454, 458-459 (E. & A. 1900). As noted by the Appellate Division in State, by Parsons v. Standard Oil Co., 5 N.J. Super. 460 (Ch. Div. 1949), mod. on other grounds, 5 N.J. 281 (1950);
[T]he rule has been familiar to us that if the subject matter in controversy in a Court of Chancery is of an equitable nature, not cognizable in a court of law, statutes of limitations although not ignored have no obligatory application, but the court will instead apply the doctrine of laches according to its discretion, regulated by the peculiar circumstances and by the pertinent precedents. [5 N.J. Super. at 468]
There was a passage of 5 1/2 years between the date of the last payment (April 1969) and the discovery of the payments by the State (October 1974), and nearly seven years until filing of the complaint in March 1976. Whether or not the defense of laches would bar a cause of action requires an examination of the circumstances of each case. Kohler v. Barnes, 123 N.J. Super. 69, 80 (Law Div. 1973); Donnelly v. Ritzendollar, 14 N.J. 96, 107-108 (1953). Laches embodies more than a mere delay or lapse of time. "There must be a delay for a length of time which, unexplained and unexcused, is unreasonable under the circumstances and has been prejudicial to the other party." West Jersey Title & C., etc., Co. v. Industrial Trust Co., 27 N.J. 144, 153 (1958); 30A C.J.S. Equity § 116.
*577 There is no basis for a finding that the elements of laches are present in this case, for it is fundamental that in cases of fraudulent concealment of a breach of duty, or in cases where the gist of the action is fraud, "the time limited within which the action must be brought will not commence to run until the discovery of the fraud, or until the complainant was in a situation where, by the exercise of reasonable diligence, he would have discovered the fraud." Giehrach v. Rupp. 112 N.J. Eq. 296, 302 (E. & A. 1933). The principle that our courts have not permitted limitations periods to be used as a shield against legitimate claims is well documented. Zimmerman v. Cherivtch, 5 N.J. Super. 590 (Law Div. 1949); Fernandi v. Strully, 35 N.J. 434 (1961); Friedman v. Friendly Ice Cream Co., 133 N.J. Super. 333, 338 (App. Div. 1975); and, as stated most recently in Leonardis v. Bunnell, 147 N.J. Super. 417 (Law Div. 1977), where a municipality sought to recover improperly paid insurance commissions:
Where the wrongs to be redressed include keeping from the public facts it would need to know to realize it has a civil claim, the period of limitations should ordinarily not begin to run until those facts are given general publicity. Cf. Cordingley v. Mendham, 12 N.J. Misc. 331, 332-333, 171 A. 158 (Sup. Ct. 1934); and see Lopez v. Swyer, 115 N.J. Super. 237, 250-251 (App. Div. 1971), aff'd 62 N.J. 267 (1973). [at 426]
In addition to the fact that the nature of the action involved does not lend itself to the equitable defense of laches, defendant failed to produce any countervailing facts which would demonstrate prejudice to him as a result of the delay. Donnelly, supra: 30A C.J.S. Equity § 116. Defendant does not dispute that the same records were available to him at the time the fraud was discovered by the State in October 1974 as when this suit was instituted in March 1976.
The court, with the consent of counsel, empaneled an advisory jury. R. 4:35-2. Although there was a later claim by defense counsel that there was no consent, the conflict need *578 not be disposed of here, inasmuch as an examination of the history of the rule indicates that it was intended to preserve and adapt the former Chancery practice by empowering the court, in its discretion, to utilize such a jury. Pressler, Current N.J. Court Rules, Comment to R. 4:35-2; 2 Schnitzer and Wildstein, New Jersey Rules Service, R. 4:40-1 at 1312; Trenton Banking Co. v. Woodruff, 2 N.J. Eq. 117, 132 (Ch. 1838); Black v. Shreve, 13 N.J. Eq. 455, 467 (E. & A. 1860).
As stated in Newark & N.Y.R.R. Co. v. Mayor, etc., Newark, 23 N.J. Eq. 515 (E. & A. 1872):
The purpose of the proceeding is to assist the Chancellor in the formation of an opinion. On all occasions of doubt and real difficulty, the Chancellor has the right to the advice of a verdict * * *. [at 524]
At the conclusion of all of the evidence the jury was instructed as to the law. The standard of proof cast upon plaintiff here was "clear and convincing." Gray v. Bradley, 1 N.J. 102, 104 (1948); Dessel v. Dessel, 122 N.J. Super. 119, 121 (App. Div. 1972), aff'd o.b. 62 N.J. 141 (1973); 4 Scott on Trusts, § 462.6 at 3112-3113 (1956) (criticizing, but acknowledging the rule). In special interrogatories the jury, in a 5-1 vote, answered each of the following questions in the affirmative:
1. Did defendant receive the following payments allegedly being made by Miki Berger or Gerald Laurence:
a. December 1968?
b. March 1969?
c. 1st payment April 1969?
d. 2nd payment April 1969?
The jury further determined that the defendant received the total sum of $10,000 from Berger and Laurence.
Prior to ruling on plaintiff's demand for punitive damages, this court conducted an evidential hearing designed to provide additional evidence concerning defendant's wealth or other mitigating circumstances. Leimgruber v. Claridge Associates, Ltd., 73 N.J. 450, 456 (1977).
*579 It has been stated that exemplary damages are awarded to a plaintiff "apart from compensatory damages and are assessed when the wrongdoer's conduct is especially egregious. They are awarded upon a theory of punishment to the offender for aggravated misconduct and to deter such conduct in the future." Leimgruber v. Claridge Associates, Ltd., supra at 454. See also, Prosser on Torts (3 ed. 1964), § 2; Berg v. Reaction Motors, 37 N.J. 396, 412-414 (1962); Di Giovanni v. Pessel, 55 N.J. 188, 190 (1970); Security Corp. v. Lehman Associates, Inc., 108 N.J. Super. 137, 142-144 (App. Div. 1970). They may be awarded where there is an intentional wrongdoing, actuated by malice, or where one performs an act in wanton and willful disregard of the rights of another. La Bruno v. Lawrence, 64 N.J. Super. 570, 575 (App. Div. 1970), certif. den. 34 N.J. 323 (1961).
Although there was no allegation or suggestion of malice on the part of defendant in the pleadings (except as implicit in the alleged breach of his fiduciary duties), this court found that punitive damages are particularly apt in circumstances where a public official deliberately breaches the confidence reposed in him. That the official was corrupted by others as opposed to initiating the corruption is of little moment, since the public was still the victim of this official's failure to resist the pernicious lures of these corruptors who sought to accomplish their goals through unlawful means.
Against this background defendant has made the motions and renewed each of the arguments noted earlier. With regard to the motion to reopen the judgment, defendant further asserts that this court failed to charge the jury that Berger and Laurence had engaged in criminal activity and had negotiated an immunity from prosecution in exchange for their testimony (even though the applicable statute of limitations had run on all but one of the charges against them when the immunity was granted).
The two witnesses, Berger and Laurence, had admittedly engaged in both the instant and unrelated but similar criminal *580 activity and had negotiated immunity. Their bias was evident. Defendant urges that under Grammas v. Colasurdo, 48 N.J. Super. 543 (App. Div. 1958), the criminal activity of these two should have been the subject of a special limiting instruction to the jury, even without defendant's request. This is true as to basic questions of law. But Grammas also noted that ordinarily the failure to register an objection will preclude the raising of argument directed to the issue of the court's instruction on appeal. A similar standard is applicable to this motion. See also, R. 1:7-2. This court, however, gave the jury an extensive charge covering the credibility of the witnesses, and instructed the jury concerning its use of evidence of the witnesses' other criminal activity and grant of immunity. See Evid. R. 55. Even if there were a misstatement in the instruction (the transcript has not yet been received), the jury verdict, as noted above, was advisory only; such error, if it existed, would have been insubstantial. R. 1:7-5. This court has considered the other in accordance with Evid. R. 55. Cf. State v. Atkins, 151 N.J. Super. 555 (App. Div. 1977). Berger's bribery conviction has also been considered on the issue of his credibility. Evid. R. 47. N.J.S.A. 2A:81-12, annotation 20-2(g), New Jersey Rules of Evidence (1972 ed.).
Following the discharge of the jury, and during the punitive damage hearing, defendant came forward with evidence offering an explanation of the incriminating $1,800 deposit of January 29, 1969, namely a personal loan of that date from the depositary bank.[3] The fact that the jurors *581 were deprived of the benefit of this exculpatory evidence is a subject of one of the motions now before the court, and will be dealt with below.
Defendant next claims that the $1,800 deposit of January 29, 1969 was subsequently shown to be "erroneously" admitted, and thus destroyed the foundation for the admissibility of evidence concerning the second large deposit (of $1,200) on October 28, 1969. Therefore, it is claimed, the second deposit should not be considered.
The problem with this argument is that evidence of the $1,800 deposit was not erroneously admitted; it was only subsequently explained. Its admissibility as relevant evidence was not vitiated by this later explanation. Moreover, the validity of the $1,200 deposit as evidence was in no way contingent on the $1,800 deposit. Cf. State v. Smollok, 148 N.J. Super. 382 (App. Div. 1977), noting the probative force of unexplained cash deposits. It is true that the jury was deprived of the benefit of this explanation, and to this extent, considering the role of the advisory jury and this court's statements regarding its "adoption" of the jury's findings, this issue could have been highly relevant, since the advisory jury was impaneled to "inform the conscience" of the court. The jury was not the final arbiter. Notwithstanding such explanation of the $1,800 deposit, the court's independent judgment regarding defendant's guilt was not changed by this evidence. The case of Newark Plank Road Co. v. Elmer, 9 N.J. Eq. 754 (E. & A. 1855), is persuasive:
In regard to verdicts of juries upon disputed questions of fact, the rule in equity is well settled. The judge who directs the issue may act upon it, determine against it, or direct a new trial at his discretion. He may disregard the misdirection of the jury, and the erroneous admission or rejection of evidence upon the trial, and may, notwithstanding the most apparent irregularities of this kind, refuse a new trial, provided he is satisfied, from the evidence as it exists, and from the record in equity, that the means of forming the correct *582 judgment are before him. See also; Trenton Banking Co. v. Rosell, 2 N.J. Eq. 511, 512 (Ch. 1841); Freeman v. Staats, 9 N.J. Eq. 816, 821 (E. & A. 1853); Carpenter v. Easton and Amboy R.R. Co., 26 N.J. Eq. 168, 171 (Ch. 1875). [at 785]
Defendant's motions to reopen the judgment and to be relieved from the judgment are denied.
NOTES
[1] See N.J.S.A. 52:17B-5.13 mandating civil recovery against public officials where there has been a conviction under criminal statute. This section, however, does not preclude the instant action, nor is there any indication that there was any intent by the Legislature to alter pre-existing remedies.
[2] Inasmuch as plaintiff's theory of recovery was a constructive trust, the action was not properly cognizable in the Law Division. Therefore the court, on its own motion, transferred the action to the Chancery Division. R. 4:3-1(a) (2).
[3] Defendant has attacked the good faith of the Attorney General in not coming forward with the exculpatory evidence concerning the $1,800 deposit until after defendant indicated he had found evidence of the loan which provided the funds for that deposit. Plaintiff's investigator informed the court that the evidence had only recently come into the State's hands, and the Attorney General's office had not understood the relevance of the evidence until defendant's attorney produced it at trial. The court accepted this explanation, and defendant has not been prejudiced thereby, since the $1,800 deposit is not being considered against defendant.