FARMINGDALE REALTY CO., PLAINTIFF-APPELLANT, v. BOROUGH OF FARMINGDALE, DEFENDANT-RESPONDENT.

Argued October 7, 1969—Decided December 16, 1969.

Mr. *John Warren, Jr.* argued the cause for plaintiff-appellant (*Messrs. Parsons, Canzona, Blair & Warren,* attorneys; *Mr. Warren,* of counsel; *Mr. William G. Bassler,* on the brief).

Mr. *John W. O'Mara* argued the cause for defendant-respondent (*Messrs. Saling, Boglioli & Moore,* attorneys; *Mr. O'Mara,* on the brief).

The opinion of the court was delivered by

HALL, J. The plaintiff, a real property owner in the defendant municipality, sued in the Law Division to secure a refund of excess taxes paid for the years 1962, 1963 and 1964 by reason of partial duplicate assessments. The action was based on the following provision of *N. J. S. A.* 54:4–54:

"Where by mistake property real or personal has been twice entered and assessed on the tax duplicate, the governing body of the taxing district or county board of taxation may order and cause the tax record to be corrected and if the tax has been twice paid the governing body of the taxing district shall refund the excessive payment without interest."

The case was tried to the court on a stipulation of certain facts and the pretrial depositions of the assessor and a member of the borough's governing body. Judgment for the

defendant resulted. The Appellate Division affirmed. 104 *N. J. Super.* 314 (1969). We granted certification. 53 *N. J.* 580 (1969).

The trial judge did not make the findings of fact in his oral opinion at the close of the case required by *R.* 1:7–4 (formerly *R. R.* 4:53–1) or subsequent to the filing of the notice of appeal as permitted by *R.* 2:5–1(b) (formerly *R. R.* 1:2–8(h)). Nor did the Appellate Division find them fully in its opinion. Therefore we proceed to do so pursuant to the constitutional grant of necessary original jurisdiction to appellate courts. *Const.* 1947, *Art.* VI, § V, *par.* 3; *R.* 2:10–5 (formerly *R. R.* 1:5–4(a)). The basic facts are undisputed.

In 1961 and since, plaintiff owned a parcel of real estate designated on the tax map as block 21, lot 4, upon which five factory buildings are situated. Plaintiff's president and his wife also owned individually block 21, lot 3, where his private residence is located. The statute prescribes that the assessor shall annually make a list, called the "tax list" or "assessment list", of each parcel of real estate in the municipality and set down in tabular form in the list, and in the copy thereof designated the "tax duplicate", the names of the owners and the taxable value, *i. e.,* the assessed valuation, of the land and of the buildings and improvements thereon together with the total of the two figures. *N. J. S. A.* 54:4–24, 26. The figure for the taxable value of buildings and improvements is one lump sum and where, as here, there is more than one building on a lot, no breakdown is set forth in the list or duplicate to indicate the taxable value of each building separately.

Shortly prior to 1961, all property in Farmingdale was revalued by an outside firm for tax assessment purposes at 100% of true value. That firm prepared a card for each parcel upon which the land and buildings thereon were described and the assigned valuation figures set forth. Where more than one building was situated on a lot, each

structure was described and valued separately. These cards. were turned over to the assessor and were adopted by him. They comprised his office records. (The annual tax list and duplicate are filed with the County Board of Taxation; after correction and revision the duplicate is delivered to the tax collector of the municipality and the list remains with the board as a public record. *N. J. S. A.* 54:4–35, 55.)

In 1962 Farmingdale went on a 100% value assessment basis for the first time and the assessor used the revaluation figures on the cards as the assessment figures in preparing the tax list and duplicate. These figures necessarily differed substantially from those used in the preceding year. The card for plaintiff's property set forth a valuation of $18,450 for the land and separate figures for each of the five buildings totalling $144,021. The card for the individually owned residence of plaintiff's president set forth a value of $24,587 for it.

However, the part-time assessor (his other occupation was school bus operator), in computing the assessment for the corporate buildings added in the $24,587 valuation of the president's residence (as well as assessing it to him individually) and also included the valuation of three of the corporate buildings twice.[1] The assessed value of the corporate buildings was by reason of these clerical mistakes set down in the tax list and duplicate as $187,000, when it should have been $144,021. The total duplicate assessment to plaintiff thus amounted to $42,979.

In 1963 and 1964 a further mistake was made. In each of those years not only was the president's home included as well in the corporate assessment and the three corporate buildings added in twice as in the previous year, but a fourth building was also duplicated, resulting in a

---

[1] The stipulation of facts does not list the corporate buildings assessed twice in this year. The duplicate assessment of the corporate buildings amounts to $18,392. No combination of three buildings exactly reaches that figure. The closest combination totals $18,300.

corporate buildings assessment for those years of $215,000 and a total duplicate assessment to plaintiff of $70,979.[2]

The record indicates, without giving details, that during this period plaintiff sought information from the assessor as to the assessment, but was met with hostility rather than information. No appeals or other action were taken, however, and the taxes were paid both on the corporate property and the president's residence based on the assessments as entered.

In 1965 the same mistaken assessments were made as in the two previous years. This time plaintiff appealed its buildings assessment to the County Board of Taxation, as "a taxpayer feeling aggrieved by the assessed valuation of his property * * *." *N. J. S. A.* 54:3-21. The duplication mistakes were discovered for the first time and conceded by the municipality, which agreed to a settlement, incorporated in a judgment of the board entered November 15, 1965, reducing the assessment to $140,000. While the judgment recites that the property "is assessed higher than the true value thereof," there is no doubt that the clerical mistakes were the actual reason for the reduction.

Thereafter plaintiff promptly applied successively to the municipal governing body and the County Board of Taxation, pursuant to the earlier quoted provisions of *N. J. S. A.* 54:4-54, for a refund of the excess taxes paid for 1962, 1963, and 1964 by reason of the duplicate assessments. Both bodies refused, the former on January 12, 1966, the latter on April 19, 1966. No appeal was taken to the state Division of Tax Appeals, but this suit (really an action in lieu of prerogative writ) was instituted against the borough on May 24, 1966, seeking a determination that duplicate assessments had been levied and of the amount of excess tax payments made by

---

[2] The total value of all the buildings duplicated, as listed in the stipulation of facts, is $71,187, which would have given a total corporate building assessment of $215,208 instead of the $215,000 used in the tax list and duplicate. The correct total duplicate assessment is consequently $70,979 and not $71,187 as set forth in the stipulation of facts.

reason thereof, together with a direction to refund the same without interest.

The Appellate Division, in deciding for the municipality, held that the phrase in *N. J. S. A.* 54:4–54, property "twice entered and assessed on the tax duplicate" "by mistake," required that the double assessment be "readily ascertainable by a simple inspection of the tax duplicate", 104 *N. J. Super.*, at 318, and without reference to any other record. The conclusion would follow that a duplication mistake which does not so appear can only be corrected through appeal to the County Board of Taxation pursuant to *N. J. S. A.* 54:3–21, as to which plaintiff is long since out of time for the years involved. The question is a novel one, the statutory provision having had no significant judicial attention.

■ We are convinced that the view of the Appellate Division is much too narrow a construction and does not accord with the fair legislative intent. In the first place, there is nothing in the literal language of the sentence authorizing its application only when there has been a precise and obvious line-for-line duplication. Property may actually be "twice entered and assessed" in whole or in part, as here, without verbatim duplication of owner's name, lot and block number, and lump sum assessed valuation of land and buildings.

Secondly, we think it clear, contrary to the Appellate Division's expression (104 *N. J. Super.*, at 318), that the other factual situations, relief as to which is authorized in subsequent sentences of the section, require proofs outside the tax duplicate to establish the basis. The second sentence deals with an assessment intended for one parcel mistakenly placed upon another. Certainly establishment of such a situation would require evidence beyond the tax duplicate itself. Likewise the situation covered by the third sentence, where one person has by mistake paid the tax on the property of another supposing to be his own, proofs outside of the tax records would be necessary. This being so, we can think of no good reason why the legislature

would intend a more restrictive approach where the claim is one of duplicate assessments, especially where the mistake becomes patent upon reference to other official records of the assessor. Of course, the provision would not be applicable where the mistake related not to whole or partial duplication of assessments, but to an error in the description of the property, as for example its size or the nature of the building thereon, which resulted in an incorrect assessment. Such mistakes go essentially to valuation and are remediable by appeal to the county board.

The Appellate Division found support for its conclusion in the belief that the overall scheme of municipal and county finances and the timetable therefor (see *East Orange v. Palmer*, 47 *N. J.* 307, 317–318 (1966) ) would be so disturbed by allowing a refund at a late date of excess taxes paid on the basis plaintiff asserts that the legislature could not have intended it. But the same problem could exist with respect to refunds granted under the other sentences of *N. J. S. A.* 54:4–54 just referred to and, indeed, where the county board or the Division of Tax Appeals orders a reduction in an assessment because of improper valuation, which may not have become final until long after the tax year concerned. In any event, the legislature has provided a method to counteract all such assessment changes occurring after the county board's striking of the tax rate and apportioning the total tax levy of a particular municipality among the various outside entities entitled to share in it in a particular year. By *N. J. S. A.* 54:4–53 and 49(c), a system of county board adjustments by debit and credit in subsequent years is spelled out. Corrected clerical errors, as well as final judgments on appeals, are included among the bases for such adjustments. So the municipality has no reasonable basis to say plaintiff should not recover because it has distributed the tax moneys paid by plaintiff.

All in all, it seems clear to us that a simple and expeditious remedy, without the rigamarole of a formal appeal to the county board, has been provided by *N. J. S. A.*

54:4–54 for the correction of the kind of clerical mistakes specified therein which are discovered after the tax list and duplicate have left the assessor's hands and that the mistakes made here come within the intendment of the first sentence of the section. It is only just that the municipality and not the wronged taxpayer should bear the burden of the unilateral clerical errors of an assessor resulting in the payment of taxes to which the municipality is not entitled. While *N. J. S. A.* 54:4–54 had its origin in the Tax Act of 1903, *L.* 1903, *c.* 208, § 30, *p.* 413, in which act a somewhat different method of appeal from and review of assessments was provided than that prescribed by the present law (which originated in *L.* 1918, *c.* 236), the section was not repealed by the 1918 act and was included in Revised Statutes 1937. There can be no doubt that the legislature thereby intended the remedy and procedure to remain. *Cf. Aichele v. Borough of Oaklyn,* 1 *N. J. Super.* 621 (*Law Div.* 1948).

We should add that we do not mean to say that a taxpayer who has been the victim of a mistake as here may not, instead of following the procedure provided in *N. J. S. A.* 54:4–54, formally appeal to the county board as in the case of a claim of overvaluation, if the error is discovered within the time limit for appeal, although the scheme of the tax act appears to indicate such appeals are designed essentially to consider questions of valuation and taxability. Nor are we called upon here to decide whether, absent such a statutory provision, a taxpayer thus harmed by a clerical error in his assessment might not obtain relief in equity on the ground of mutual mistake. See *e. g., Bridgeport Hydraulic Co. v. City of Bridgeport,* 103 *Conn.* 249, 130 *A.* 164 (1925). *Cf. Mayor and Aldermen of Jersey City ads. Riker,* 38 *N. J. L.* 225 (*Sup. Ct.* 1876); *Milmar Estate v. Borough of Fort Lee,* 36 *N. J. Super.* 241 (*App. Div.* 1955); *Suburban Department Stores v. East Orange,* 47 *N. J. Super.* 472 (*App. Div.* 1957).

Other contentions of defendant require only brief mention. It is urged that plaintiff should be barred from relief because it did not take advantage each year of the opportunity

afforded by *N. J. S. A.* 54:4–38. This section requires each assessor to give public notice, before he files the assessment list and duplicate with the county board, of a time and place when the list may be inspected by any taxpayer "for the purpose of enabling the taxpayer to ascertain what assessments have been made against him or his property and to confer informally with the assessor as to the correctness of the assessment, so that any errors may be corrected before the filing of the assessment list and duplicate." A similar contention was adequately answered in *Bridgeport Hydraulic Co. v. City of Bridgeport, supra*:

> "No rule or duty is imposed upon a taxpayer to examine the books, or conduct of the officials, of a municipality and ascertain if they have complied with the requirements of the law before paying a tax presented for payment by the tax collector.
> "It would be a great hardship to taxpayers and annoyance to tax officials if each taxpayer was required to go personally and examine the grand lists and various steps taken." (130 A. at 167).

■ Defendant further suggests that the total assessment on plaintiff's buildings should be considered as the assessor's determination of their true value, subject to review only by appeal to the county tax board on the ground of overvaluation. The point is utterly specious. Not only does the record show that this is the only instance in the entire municipality where the assessor did not use the revaluation figures as his determination of true value, but, as we have earlier said, it is conceded that the figure is solely the result of clerical duplication.

■■ Finally it is contended that plaintiff failed to exhaust administrative remedies by not appealing to the Division of Tax Appeals the county tax board's denial of its petition for refund and also is guilty of laches. As to the former, this is clearly a case involving only legal questions not calling for the exercise of administrative expertise. The interests of justice and expedition dictate that the exhaustion doctrine be found inapplicable. *Matawan Borough v. Monmouth County Board of Taxation,* 51 *N. J.* 291, 296–297

(1968). As to the latter, *N. J. S. A.* 54:4–54 prescribes no time limit within which an application to correct assessment mistakes and obtain a refund must be made. We need not here decide what limitation should apply because plaintiff acted without undue delay. It made the applications to the borough governing body and the county board promptly after the mistakes were discovered through the 1965 appeal and instituted this action five weeks after the board's refusal to grant relief. Moreover, the borough has not demonstrated cognizable prejudice by reason of the lapse of time.

Plaintiff is entitled to a judgment determining that duplicate assessments had been levied to the extent earlier mentioned, directing correction of the tax record accordingly, fixing the amount of excess taxes paid for the years 1962, 1963 and 1964 by reason thereof and ordering the same to be refunded by defendant without interest. The judgment of the Appellate Division is reversed and the matter remanded to the Law Division for the entry of such a judgment.

*For reversal and remandment* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—NONE.