147 N.J. Super. 417 (1977)
371 A.2d 365
PETER A. LEONARDIS, MARY A. LEONARDIS, MARVIN L. RUBIN, JOYCE RUBIN, STANLEY GOLDBERG, KENNETH SCHEIHOFER, GARY W. PARIS, VIRGINIA PARIS, MYRNA LOPAT AND SHERMAN LOPAT, ON BEHALF OF THE TOWNSHIP OF UNION, A MUNICIPAL CORPORATION, IN THE COUNTY OF UNION, IN THE STATE OF NEW JERSEY, PLAINTIFFS,
v.
ROBERT BUNNELL, BUNNELL BROS., INC., ALTON VAN HORN, HENRY H. KAGEL, HUGO C. BIERTUEMPFEL, LEONARD ZEHNBAUER, INC., LAWRENCE SCHRECK, JAMES P. GENOVESE, WILLIAM HEBEL, MAX SEROTA, BURTON CO., INC., EUGENE M. ECKLUND AGENCY, UNITED POLICYHOLDERS SERVICE CORP., RICHARD DREHER, JR., WILLIAM BAUER, JR., KOLOMON KISS, EUGENE ECKLUND, JOHN S. ZIMMERMAN, JAMES C. CONLON, ANTHONY RUSSO, ROBERT R. LACKEY, ROY KITCHELL, SAMUEL L. RABKIN, JOHN YACOVELLE, AND REV. WILLIAM F. STATON, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 26, 1977.
*420 Mr. Lawrence Friedman for plaintiffs.
Mr. James B. Flynn for defendants Robert Bunnell and Bunnell Bros., Inc. (Messrs. Williams & Flynn, attorneys).
Mr. Kenneth S. Javerbaum for defendant James P. Genovese (Messrs. Bloom & Javerbaum, attorneys).
Mr. Eugene Ecklund, defendant Pro Se.
Mr. Bernard Warren Hehl for defendant James C. Conlon (Messrs. Romano, Hehl, Romankow & Wilde, attorneys).
Mr. Stanley A. Cohn for defendant John Yacovelle (Messrs. Yacovelle & Cohn, attorneys).
Mr. John R. Weigel for defendant Alton Van Horn.
Mr. Michael A. Chasan for defendant Richard Dreher, Jr.
Mr. Richard A. Mink for defendant John S. Zimmerman.
Mr. William Bauer, Jr., defendant Pro Se.
Mr. Howard Schwartz for defendant Leonard J. Zehnbauer, Inc. (Messrs. Simone & Schwartz, attorneys).
*421 Mr. Salvatore S. De Luca for Anthony Russo and Rev. William F. Staton.
Mr. Edward J. Toy for defendant Max Serota (Messrs. Toy & Taylor, attorneys).
Mr. Thomas E. O'Gorman for defendant Henry H. Kagel (Messrs. O'Gorman & McMann, attorneys).
BRODY, J.J.D.R.C., Temporarily Assigned.
The Union Township Committee retained defendant Bunnell Bros., Inc. (Bunnell) from 1961 through 1974 to serve as the township's insurance broker. Bunnell shared its commissions equally with other Union Township brokers, each of whom was privately designated by a different one of the five committeemen.
This action, initiated and prosecuted by several of the township's residents and taxpayers, was brought by leave of court to recover these commissions, totaling $59,186.52, after the committee refused to institute the suit. N.J.S.A. 2A:15-18. Joined with Bunnell as defendants are its principal and various committeemen and brokers who are alleged to have participated in the arrangement.
Without objection, I dismissed the complaint for lack of prosecution as to several defendants not served because of death, dissolution, unknown address or misnomer. The parties remaining have by motions for partial summary judgment submitted the questions of whether the Bunnell contract with the township is legal; if illegal, whether the township is entitled to recover the commissions from Bunnell, and if so, whether that recovery must be curtailed by limitations.
Defendants' main position is that Bunnell was free to share commissions with the other brokers who aided in executing its contract with the township. N.J.S.A. 17:22-6.18 impliedly lends support to this statement in generally prohibiting the payment of brokerage commissions to anyone *422 not licensed by the Commissioner of Banking and Insurance as an agent, broker or solicitor.
But this argument, however sound as far as it goes, diverts attention from the conceded fact that the other brokers were not chosen by Bunnell. Tainting the arrangement was the sub rosa designation of those brokers by the individual members of the township's governing body. True, it is not alleged that the committeemen had a pecuniary interest in the contract. Nevertheless, their undisclosed power to appoint the participating brokers constituted a private interest capable of influencing the committeemen to award the contract to Bunnell. That interest was sufficient to render the contract voidable. Cf. Griggs v. Princeton, 33 N.J. 207, 219-220 (1960); Pressey v. Hillsborough Tp., 37 N.J. Super. 486 (App. Div. 1955).
Defendants' alternate approach is to view the contract as running directly from the township to the participating brokers. They argue that since all the committeemen engaged in the practice, either actively or by acquiescence, in effect the committeemen ratified the appointment of the brokers as an "insurance board" when, as the governing body, they awarded the contract to Bunnell. See De Muro v. Martini, 1 N.J. 516, 521-522 (1949). By viewing the designation of the brokers as an appointment by the governing body, defendants seek to legitimate each committeeman's power of appointment.
Appointment by the governing body of an "insurance board" might well have been legal even though, as a political compromise, a different committeeman designated each broker. Under those circumstances, while the committeemen's private interest would be the same as their invalidating interest in the case at bar, it would be legally acceptable as a necessity of government so long as the action was taken by the governing body at a public meeting. The opportunity for public scrutiny is the critical difference. Concern for public scrutiny tends to keep private or political interests in line with the public interest. In this *423 regard, the words of Chief Justice Vanderbilt bear repeating:
* * * [Public officials] must be impervious to corrupting influences and they must transact their business frankly and openly in the light of public scrutiny so that the public may know and be able to judge them and their work fairly. When public officials do not so conduct themselves and discharge their duties, their actions are inimicable to and inconsistent with the public interest, and not only are they individually deserving of censure and reproach but the transactions which they have entered into are contrary to public policy, illegal and should be set aside to the fullest extent possible consistent with protecting the rights of innocent parties. [Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 475, cert. den., Burlington Cty. Bridge Comm'n v. Driscoll, 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652 (1952)]
In addition, during all but the first three months of the period in question the Legislature required that votes of a public body be taken at a public meeting. Official action otherwise taken by a public body was declared voidable. L. 1960, c. 173. That legislation was expanded in the superseding Open Public Meetings Act which requires that even the deliberations of public bodies be conducted at open meetings. N.J.S.A. 10:4-6 et seq. (effective January 19, 1976).
The arrangement in this case satisfied the committeemen and their political patrons in both parties, but the public was excluded, as was, it must be presumed, the public's interest.
Finally on this point, defendants contend that the public interest was unaffected because Bunnell was paid its commissions by the insurance carriers, not the township. Robert Bunnell, a principal of Bunnell, testified at depositions concerning the relation between commissions and premiums. It is clear from his testimony that commissions are an identifiable component of the premiums the township paid Bunnell every year, and that while Bunnell never did so, it would be proper for a broker to negotiate commissions with a large institutional insured such as the township. Commissions so reduced would effect a dollar-for-dollar reduction in the *424 premiums. Thus, when the township paid Bunnell premiums it was also paying Bunnell its commissions. The public's interest in reducing those commissions may not have been actively pursued by the committee.
Beyond that, the public has an interest in encouraging competition among those offering to provide services to the township. Public bidding is not required for certain municipal service contracts to enable a governing body to choose a service contractor whose knowledge, skill, imagination and experience may uniquely satisfy the municipality's needs. See Capasso v. Pucillo, 132 N.J. Super. 542, 550 (Ch. and Law Div. 1974), aff'd 132 N.J. Super. 473 (App. Div. 1974); see also Franklin v. Horton, 97 N.J.L. 25, 28 (Sup. Ct. 1921), aff'd 98 N.J.L. 262 (E. & A. 1922). That choice, however, must be exercised in the public interest even in the absence of a bidding requirement. Oakley v. Atlantic City, 63 N.J.L. 127, 131 (Sup. Ct. 1899).
The practice complained of in this case subverts this objective. An outside broker, learning of the arrangement, is likely to be discouraged from coming forward either from fear of participating in an unlawful practice or from a belief that such an arrangement would be closed to him. The practice also has an unwholesome effect on the insiders who may tend to relax their industry and concern for providing the township with the broadest reasonable coverage at the least cost. The public interest is clearly involved in this case.
Viewed in its true light, in any given year the brokerage contract was not with Bunnell alone, as publicly authorized by the committee, but was also with five other brokers as privately authorized by the committeemen. The publicly authorized contract was to that extent a sham. The privately authorized contract was obviously not an official act and was never publicly ratified by the committee acting in its official capacity. With the public contract a sham and the private contract unauthorized and unratified, the township is entitled to the return of all commissions paid Bunnell under the contract. *425 Potter v. Metuchen, 108 N.J.L. 447, 451 (Sup. Ct. 1932).
The final question is whether the township is barred by limitations from full recovery against Bunnell. Generally, the State is not barred by limitations. Veterans Loan Auth. v. Wilk, 61 N.J. Super. 65, 70-71 (App. Div. 1960). Whether that general immunity from limitations extends to municipalities has not been decided in New Jersey. Decisions in other jurisdictions have extended the immunity to municipalities to vindicate public or governmental rights as opposed to private or proprietary rights. See e.g., City of Chicago v. Dunham Towing and Wrecking Co., 246 Ill. 29, 92 N.E. 566 (Sup. Ct. 1910); Reeves v. City of Phoenix, 1 Ariz. App. 157, 400 P.2d 364 (Ct. App. 1965); Goldberg v. Howard Cty. Welfare Board, 260 Md. 351, 272 A.2d 397 (Ct. App. 1971). The distinction is similar to the one formerly used in New Jersey to determine municipal immunity from tort liability until it fell into disrepute as logically unworkable, see B.W. King, Inc. v. West New York, 49 N.J. 318, 324 (1967), and then disappeared with the abolition of sovereign immunity. Willis v. Dept. of Conserv. & Econ. Develop., 55 N.J. 534 (1970).
Our Supreme Court has shown no relish to apply the distinction to municipal immunity from limitations.
It is doubtful whether the government versus proprietary theory should be imported into our present endeavor, where it will probably prove to be no more serviceable than in the area of municipal immunity from liability in tort. A rule so frequently condemned should not be expanded beyond its present scope of applicability unless such a result is essentially necessary. [Union City Housing Authority v. Commonwealth Trust Co., 25 N.J. 330, 340-341 (1957)]
There is no need in this case to consider reviving the distinction to resolve the limitations question. The rigors of the statute of limitations are relaxed where there is a genuine claim of late discovery of a cause of action. Lopez v. Swyer, 62 N.J. 267 (1973). As discussed above, the gravamen *426 of the wrong warranting relief is the private instead of public manner in which the contract in question was authorized. It is, therefore, particularly appropriate that where, as here, the true nature of the contract was first publicized shortly before this suit was commenced, the public not be barred from vindicating its rights in full even though the actionable events extend beyond the limitations period. Where the wrongs to be redressed include keeping from the public facts it would need to know to realize it has a civil claim, the period of limitations should ordinarily not begin to run until those facts are given general publicity. Cf. Cordingley v. Mendham, 12 N.J. Misc. 331, 332-333, 171 A. 158 (Sup. Ct. 1934); and see Lopez v. Swyer, 115 N.J. Super. 237, 250-251 (App. Div. 1971), aff'd 62 N.J. 267 (1973).
There are no countervailing equitable considerations of prejudice to Bunnell. Its records, identified at depositions, are complete. They show the amount of premiums paid and commissions received for each of the years in question. As to each year, they identify each participating broker, by whom designated, and how much paid. The operative facts are not disputed. There being no issue requiring the assessment of credibility, I conclude without the necessity of a hearing that the discovery rule applies. Lopez v. Swyer, supra, 62 N.J. at 275.
Partial summary judgment will be entered in favor of the Township of Union and against defendant Bunnell Bros., Inc. in the amount of $59,186.52.