163 N.J. Super. 522 (1978)
395 A.2d 251
JOHN MC SHAIN AND THE BARCLAY, INC., A CORPORATION OF THE STATE OF PENNSYLVANIA, PLAINTIFFS,
v.
TOWNSHIP OF EVESHAM, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided October 31, 1978.
*523 Mr. William S. Ruggierio for defendant Evesham Township (Messrs. Ruggierio & Freeman, attorneys).
*524 Mr. Lewis Pepperman for plaintiff (Messrs. Stark & Stark, attorneys).
Mr. Arthur F. Risden for defendants John Croft III and Croft Farms, Inc. (Messrs. Archer, Greiner & Read, attorneys).
Mr. William W. Freihofer, Jr. for defendants Estate of David Davis Wilkins and Boardwalk National Bank of Atlantic City (Messrs. Kirkman, Mulligan, Bell & Armstrong, attorneys).
HAINES, J.S.C.
The case was presented to the court on the following stipulated set of facts.
Plaintiffs are the owners of certain real estate in defendant township. Their property was assessed for real estate tax purposes and tax bills forwarded to them by the tax collector. Prior to the second half of 1958 plaintiffs' property was described as "20 acres meadow, 47.99/100 acres farmland, house and outbuildings, stock, etc." The township, apparently because it had no tax map, did not refer to any block or lot on the bill, which showed total taxes for the year 1957 (upon which the taxes for the first half of 1958 were based) of $606.73. The assessment was $1,640 for land, $2,100 for buildings, and $600 for personalty, resulting in a total of $4,340. The tax rate was $13.98 per $100 of assessed valuation. Commencing with the second half of 1958, tax bills contained the same general description of plaintiffs' property but also referred to Block 44, Lots 5-6-7. In the last half of 1958 the assessment was increased to $7,850 while the tax rate was reduced to $10.92 per $100.
The same property description appears until the last half of 1968, when the township discovered that Lot 5 was not owned by plaintiffs and reference to it was deleted from subsequent tax bills. Thereafter, Lot 5 was assessed to its true owner and (without the lot reference) also assessed to plaintiffs. Plaintiffs owned only the property known as *525 Block 44, Lot 6, on the township's tax map. Lot 7 was owned by David Davis Wilkins, who died and whose estate and trust are defendants. Lot 5 was owned by John Croft III until sometime after 1955 when he conveyed it to Croft Farms, Inc. Both Croft and the corporation are named as defendants.
Plaintiffs paid all of the tax bills they received from 1955 to 1975, without protest, and, until the latter year, without actual knowledge that their assessment included properties which they did not own. Upon discovery of this error plaintiffs requested that their mistaken payments be refunded. The township denied the request. Plaintiffs now seek a recovery of the excess taxes paid but waive any claim to those not assessed by lot and block numbers, i.e., taxes assessed prior to 1958. It was agreed that a declaratory judgment should be rendered and, if favorable to plaintiffs, an informal accounting would be submitted to the Township of Evesham in order that its governing body could determine the amount of taxes to be refunded.
The case turns on N.J.S.A. 54:4-54, which provides as follows:
Whereby mistake property real or personal has been twice entered and assessed on the tax duplicate, the governing body of the taxing district or county board of taxation may order and cause the tax record to be corrected and if the tax has been twice paid the governing body of the taxing district shall refund the excessive payment without interest. Where by mistake an assessment intended for one parcel has been placed upon another, the governing body may cancel the erroneous assessment return without interest any money paid by one not the owner of the parcel intended to be assessed, and enter upon the record the assessment and tax against the proper parcel, after a hearing upon five days' notice to the owner. Where one person has by mistake paid the tax on the property of another supposing it to be his own, the governing body after a hearing on five days' notice to the owner, may return the money paid in error without interest and restore the record of the assessment and tax against the property in the name of the true owner, provided the lien of the tax has not expired and no transfer or encumbrance has been put on record against the property since the date of the payment in error. No assessment of real or personal *526 property shall be considered invalid because listed or assessed in the name of one not the owner thereof, or because erroneously classed as the land of an unknown or nonresident owner.
Plaintiffs are entitled to relief, as to the Croft lot, under the first sentence of the statute, for those years when that lot was "twice entered and assessed." The statutory language is unambiguous and the equities obvious.
The second sentence of this section can afford plaintiffs no relief because the problem is not that the assessments were incorrectly placed on the parcels of land, but rather that a person other than the owner of the parcels was assessed. The third sentence of this section applies to both properties, erroneously assessed to plaintiffs. Plaintiffs are "persons" who have "by mistake, paid the tax on the property of another supposing it to be [their] own." The question arises, however, whether the last clause of this sentence bars plaintiffs from obtaining relief because the properties have been transferred since the date of the erroneous payments. (The requirement that the lien of the tax has not expired appears to be no more than an historical remnant. See Campion v. Raritan Tp., 56 A. 704 (Sup. Ct. 1903). Under our present system of taxation the lien of the tax does not expire.)
Limited assistance in interpreting this clause is provided by two decisions of the Board of Tax Appeals: Tide Water Associated Oil Co. v. Jersey City, 18 N.J. Misc. 137, 11 A.2d 416 (1940), and Irvington Auto Co. v. Irvington, 20 N.J. Misc. 166, 25 A.2d 635 (1942); see also, Union Terminal Cold Storage Co. v. Jersey City, 37 N.J.L.J. 306 (1914). These cases involved the assessment of personal property erroneously billed to persons who did not own the property. These assessments were disallowed under the statute here involved, without any requirement that a hearing be held below.
More recently the Supreme Court, in discussing the first sentence of the section, opined that:
*527 All in all, it seems clear to us that a simple and expeditious remedy, without the rigamarole of a formal appeal to a county board, has been provided by N.J.S.A. 54:4-54 for the correction of the kind of clerical mistakes specified therein which are discovered after the tax list and duplicate have left the assessor's hands, and that the mistakes made here come within the intendment of the first sentence of the section. It is only just that the municipality and not the wronged taxpayer should bear the burden of the unilateral clerical errors of an assessor resulting in the payment of taxes to which the municipality is not entitled. [Farmingdale Realty Co. v. Farmingdale, 55 N.J. 103, 110-111 (1969)]
Although the municipality in the present instance was entitled to the taxes paid, albeit not from plaintiffs, the principle that the municipality should bear the burden of unilateral clerical errors should still guide the construction of the statute.
Viewed with this background, it becomes apparent that the condition is a hurdle for the municipality to clear when it assesses the property to the true owner. A hearing is necessary only for the protection of third parties who may have acquired an intervening interest in the property either by conveyance or encumbrance. Consequently, the owner of the property is given notice. There is no reason to involve the taxpayer who paid by mistake; he is entitled to recover in any event. A contrary result would be unfair.
Defendant asserts that because plaintiffs failed to exhaust their administrative remedies in that they did not appeal their assessment to the county board of taxation or make a formal application to the governing body of the township for relief pursuant to N.J.S.A. 54:4-54, this court should decline to grant the requested relief. I disagree. The Supreme Court, in Farmingdale, pointed out that the section was designed to provide a "simple and expeditious remedy, without the rigamarole of a formal appeal to the county board." 55 N.J. at 110. Plaintiffs did unsuccessfully (though informally) petition the township committee for a refund. Finally, the exhaustion doctrine may be ignored whenever, as here, the issue involves only questions of law *528 not calling for the exercise of administrative expertise. See Matawan v. Monmouth Cty. Tax Bd., 51 N.J. 291, 296-97 (1968).
The township also raises the bar of "the applicable statute of limitations." The only such statute which could apply is N.J.S.A. 2A:14-1 which imposes a six-year limitation on actions "for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant * * *." Plaintiffs' claim here is based upon statute; the limitations of N.J.S.A. 2A:14-1 do not apply as they would to ordinary contract or common law obligations. Warren Cty. v. Harden, 95 N.J.L. 122 (1921). See also, Van Riper v. Atlantic City Electric Co., 23 N.J. 259 (1957).
Assuming that the statute is applicable in the instant case, plaintiffs had no reason to know or suspect that they were being assessed and billed for property which they did not own. When block and lot numbers first appeared on plaintiffs' tax bills, those same bills also contained the identical description of the property which had been set forth on earlier bills, when tax map information was not provided. Consequently, the notice given to plaintiffs by the tax bills, if any, was that the very same property was being assessed to them under the block and lot designations as had been assessed before those designations were used. In addition, taxpayers were under no obligation to examine the tax records and maps of the township. Farmingdale Realty Co. v. Farmingdale, supra 55 N.J. at 112. Therefore, I find that the plaintiffs did not have notice or reason to know of the erroneous assessments prior to the time they demanded reimbursement. Under these circumstances, the court may refuse to apply a statute of limitations. Lopez v. Swyer, 62 N.J. 267 (1973). Its rigors "are relaxed where there is a genuine claim of late discovery of a cause of action". Leonardis v. Bunnell, 147 N.J. Super. 417, 425 (Law *529 Div. 1977). I conclude that if any statute of limitation is applicable, it is not to be applied here.
Lastly, it is suggested that the Tort Claims Act may be a defense to plaintiffs' claim. However, that statute was not pleaded and therefore may not be relied upon. R. 4:5-4. If it were pleaded, my conclusion would be no different. That act provides immunity to a municipality for injury caused by "an act or omission in the interpretation or application of any law relating to a tax." N.J.S.A. 59:7-2. Here we are not dealing with the interpretation or application of a tax law  we are dealing with a ministerial or clerical mistake, against which the Act does not provide protection to the municipality.
Accordingly, I find that the township is liable to plaintiffs for the repayment of all taxes erroneously paid by them since 1958. The statute prohibits the payment of interest on the monies due.
Plaintiffs shall prepare an accounting of all monies claimed due. This shall be forwarded to the township, through its attorney, for its scrutiny and approval or rejection. I retain jurisdiction for the purpose of resolving any disputes which may arise with respect to such accounting.
The relief which I have provided makes it unnecessary for me to decide any other claims set forth in the pleadings.
No costs.