KUSKIN, J.T.C.
Plaintiff JC Trapper, LLC seeks to recover property taxes and interest paid to defendant City of Jersey City on property owned by the City. The property, consisting of two tax lots, Block 97, Lot S and Block 98, Lot S (the “Street Lots”), constituted a portion of Essex Street in Jersey City until vacated in 1976 in favor of the owner of adjacent land. Pursuant to the terms of the ordinance effecting the vacation (the “Vacation Ordinance”), title to the Street Lots reverted to defendant in 1987. However, plaintiff and its predecessor in title paid property taxes and interest with respect to the Street Lots from 1988 through part of 1999. Plaintiffs claim for recovery of the amount paid is based on N.J.S.A. 54:4-54, which permits recovery of taxes paid by one party with respect to property of another if the taxpayer paid the taxes “by mistake ... supposing ... [the other’s property] to be his own.” The court must determine, therefore, whether the payments comprising the amount claimed by plaintiff resulted *426 from a “mistake” as contemplated by the statute. I conclude that they did not.
Plaintiff filed its complaint in this matter in the Superior Court of New Jersey, Law Division, Hudson County in August 1999. The complaint sought: 1) a declaration that title to the Street Lots reverted to defendant in 1987; and 2) recovery of the sum of $492,741.06 in taxes and interest. On February 4, 2000, the Honorable Arthur N. DTtalia entered an Order determining that, under the Vacation Ordinance, title to the Street Lots reverted to defendant as of April 1987. He then transferred the matter to the Tax Court for resolution of plaintiffs claim for recovery of taxes and interest. Judge DTtalia’s ruling constitutes the law of the case, and establishes the status of title for purposes of my decision.
Plaintiff and defendant each moved for summary judgment. On August 28, 2000, I issued a letter opinion containing certain legal rulings and denying both motions because of the existence of an issue of fact relating to whether the disputed taxes and interest were paid “by mistake” under N.J.S.A. 54:4-54. I then conducted a plenary hearing. This opinion, in addition to deciding the factual issue based on the plenary hearing and submissions by the parties in connection with the motions, incorporates, refines, and supplements the legal rulings contained in my letter opinion.
The undisputed relevant factual background of the matter is as follows. Onyx Chemical Company, Millmaster Onyx Group (“Onyx”) owned property (the “Onyx Property”) in Jersey City located on both sides of the Street Lots. In 1976, defendant’s municipal council granted the petition of Onyx to vacate the Street Lots and adopted the Vacation Ordinance which included the following provision:
In the event the Onyx Chemical Corporation shall terminate its business operations in Jersey City, the vacated portion of Essex Street referred to in this ordinance shall revert to the City of Jersey City.
Onyx terminated its business operations in April 1987, and, shortly thereafter, defendant’s Corporation Counsel prepared, for introduction at a municipal council meeting, an ordinance repealing the Vacation Ordinance. Matthew Burns, a principal of, and *427 attorney for, Washington Essex Associates (“WEA”), then the contract purchaser of the Onyx Property and Street Lots, requested defendant to defer action with regard to repealing the Vacation Ordinance and reopening Essex Street pending completion of the demolition of industrial buildings on the property and environmental clean-up. The letter containing the request stated: “We do not dispute the City’s position as to the reversion and the reopening of Essex Street. Our proposed site plan application, which we hope to file in a few weeks, provides for the re-opening of Essex Street with appropriate improvements being made.”
In June 1987, WEA submitted to defendant’s Board of Adjustment an application for site plan approval for a residential and commercial development on the Onyx Property. The property described in the application included the Street Lots. In January 1988, the Board of Adjustment granted the approval. WEA acquired title to the Onyx Property and Street Lots on March 23, 1988.
WEA filed tax appeals for tax year 1988 with respect to the Onyx Property and Street Lots, and the Hudson County Board of Taxation reduced the assessments on all lots. By letter dated August 7, 1989, to the auditors for defendant, Mr. Burns summarized the results of the tax appeals and stated as follows with respect to the Street Lots:
We are, of course, appealing the County Board Judgment particularly the continued assessment of Block 97, Lot S and Block 98, Lot S, which the County Board reduced to assessments of $659,800 and $652,800 respectively. Neither of these parcels should be assessed at all since they are now part of the reopened Essex Street, which was vacated by 1972[sic] Ordinance which provided that the street was reopened upon the activities of Millmaster ceasing.
WEA also filed tax appeals for tax years 1989, 1990 and 1993. The Tax Court Complaint for tax year 1990 reflected that the Hudson County Board of Taxation had canceled the assessments on the Street Lots for that year.
In December 1993, WEA and defendant entered into a settlement with respect to the pending tax appeals. Defendant’s appraisal expert prepared an allocation of the agreed settlement assessment among the various tax lots under appeal, and this allocation w'as incorporated into Stipulations of Settlement for tax *428 years 1988, 1989 and 1990. The assessment allocation to the Street Lots in each of the stipulations was $336,600 to Block 97, Lot S and $332,700 to Block 98, Lot S. The 1990 Stipulation provided that the Freeze Act would apply for tax years 1991 and 1992. The Hudson County Board of Taxation entered judgments for tax year 1993 reflecting the agreement of the parties as to the assessment allocation to the Street Lots for that year.
On July 1, 1998, WEA conveyed the Onyx Property and Street Lots (the tax map reference in the Deed was “Block No. 97 and 98, Lot No. All Lots”) to plaintiff. The deed assigned to plaintiff “any and all of [WEA’s] tangible and intangible personal property of any kind or nature, ...” On July 29,1999, plaintiff conveyed the Onyx Property, but not the Street Lots, to TCR Jersey City I, LLC. At the date of conveyance, the issues of whether or when ownership of the Street Lots reverted to defendant remained unresolved. To induce the purchaser’s title insurance company to insure title, the purchaser, plaintiff and WEA entered into an agreement with the title insurance company which recited the ownership issue and contained certain indemnifications from plaintiff and WEA pending resolution of the issue. Plaintiff filed its Superior Court Complaint on August 12, 1999. Thereafter, WEA delivered to plaintiff a document assigning all rights relating to reimbursement of any real estate taxes erroneously paid by WEA.
For the period 1988 through July 29,1999, the date plaintiff sold the Onyx Property, WEA and plaintiff paid real estate taxes and interest with respect to the Street Lots in the aggregate amount of $492,741.06. This amount included $259,549.35 in taxes and interest paid at the time of sale of the Onyx Property and Street Lots to plaintiff in order to redeem two tax sale certificates issued on June 24, 1994 with respect to the Street Lots. The balance consisted of $209,021.83 in taxes paid by WEA, and $24,169.88 paid by plaintiff to redeem tax sale certificates issued June 24, 1999 with respect to the Street Lots.
Plaintiffs claim for refund of $492,714.06 is governed by the following provisions of N.J.S.A. 54:4-54 (the “Taxpayer Mistake Provisions”):
*429 Where one person has by mistake paid the tax on tho property of another supposing if to be his own, tho governing body after a hearing, on five days’ notice to the owner, may return the money paid in error without interest and restore the record of the assessment and tax against, the property in the name of the true owner, provided the lien of the tax lias not expired and no transfer or encumbrance has been put on record against tho property since the date of the payment in error.
These provisions were interpreted in McShain v. Evesham. Tp., 163 N.J.Super. 522, 395 A.2d 251 (Law Div.1978). In that case, for the period 1958 to 1975, the plaintiffs paid taxes attributable to two tax lots which, without the plaintiffs’ knowledge,. were assessed to them but owned by others. The court ordered a refund of the taxes, stating as follows:
Although the municipality in the present instance was entitled to the taxes paid, albeit not from plaintiffs, the principle that the municipality should bear the burden of unilateral clerical errors should still guide the construction of the statute.
Viewed with this background, it becomes apparent that . [the provision of the statute relating to a transfer of the property! is a hurdle for the municipality to clear when it. assesses the property to the true owner. A hearing is necessary only for the protection of third parties who may have acquired an intervening interest in the property either by conveyance or encumbrance. Consequently, the owner of the property is given notice. There is no reason to involve the taxpayer who paid by mistake; he is entitled to recover in any event. A contrary result would be unfair.
[Id. at 527, 395 A.2d 251.]
With respect to the assertion by the defendant that the plaintiffs had failed to exhaust their administrative remedies, McShain, supra, held that the exhaustion doctrine “may be ignored whenever, as here, the issue involves only questions of law not calling for the exercise of administrative expertise.” Id. at 527-28, 395 A.2d 251 (citation omitted).
In support of its holding that the municipality not the taxpayer “should bear the burden of unilateral clerical errors,” McShain, supra, relied on the following description of the function of N.J.S.A. 54:4-54 articulated by our Supreme Court in the context of a claim for refund under a portion of the .statute requiring a refund of excess taxes paid when, “by mistake,” property has been assessed twice:
All in all, it seems clear to us that a simple and expeditious remedy, without the rigamarolc of a formal appeal to the county board, has been provided by N.J.S.A. 54:4-54 for the correction of the kind of clerical mistakes specified therein which are discovered after the tax list and duplicate have left the assessor's hands and that the mistakes made here come within the intendment of the first sentence of *430 the section. It is only just that the municipality and not the wronged taxpayer should bear the burden of the unilateral clerical errors of an assessor resulting in the payment of taxes to which the municipality is not entitled.
[Farmingdale Realty Co. v. Farmingdale, 55 N.J. 103, 110-11, 259 A.2d 708 (1969).]
Based on McShain, supra, and Famingdale Realty Co., supra, I conclude that plaintiff may not be denied relief for failure to exhaust administrative remedies, and that the transfers of the Onyx Property and Street Lots described above do not preclude plaintiff from obtaining relief. I further conclude that, if the payments in issue were made “by mistake,” a refund is mandatory not discretionary even though N.J.S.A. 54:4-54 provides that “the governing body ... may return the money paid in error ...” (emphasis added). Although the phrase “may return” might invest the governing body with discretion, when one taxpayer has mistakenly paid taxes on property owned by another (I make no ruling on that issue), such discretion is not applicable where a taxpayer has mistakenly paid taxes on property owned by the taxing municipality. In the former situation, the municipality is entitled to collect the taxes, and the Legislature conceivably could have made the refund of a mistaken payment discretionary in the event no procedure is available to the municipality to - obtain payment of taxes from the correct taxpayer. In the latter situation, however, no taxes are due to the municipality, and the municipality may not retain taxes mistakenly paid. As stated in McShain, supra, “[a] contrary result would be unfair.” McShain v. Evesham Tp., supra, 163 N.J.Super. at 527, 395 A.2d 251.
Although McShain, supra, granted relief under the Taxpayer Mistake Provisions of N.J.S.A. 54:4-54, neither that decision nor any other reported decision has discussed the type of “mistake” to which the Provisions refer. In other contexts, the New Jersey courts have held that, if a tax is paid under a mistake of law, a refund is not appropriate. For example, in Continental Trailways, Inc. v. Director, Div. of Motor Vehicles, 102 N.J. 526, 509 A.2d 769 (1986), the Court held that taxes paid pursuant to a statute later declared unconstitutional are not subject to refund. “It long has been the general common-law rule that where a party, without mistake of fact, fraud, duress, or extortion, voluntarily *431 pays money on a demand that is not enforceable against him, he may not recover it.” Id. at 548, 509 A.2d 769 (citations omitted). In New Jersey State Bar Ass’n. v. Berman, 259 N.J.Super. 137, 611 A.2d 1119 (App.Div.1992), the court stated as follows:
Nevertheless, when a tax already collected is set aside by judicial decision, the law raises a presumption of refund in order to prevent the state from receiving unjust enrichment . . The primary exception to this rule is where a party, without a mistake of fact, or fraud, duress or extortion, voluntarily pays money on demand which is not enforceable against him. “Voluntary payment of a tax made in the belief that the law imposing it was valid, even where the tax is later declared to be unconstitutional, is paid under mistake of law, thereby precluding recovery of the amount paid.” . . However, it logically follows that a tax paid with the belief that the law imposing it is invalid is not paid under a mistake of law, and thus recovery of the amount paid is not precluded. ’
[Id. at 154-55, 611 A.2d 1119 (citations omitted) (footnote omitted).]
 Based on the preceding authorities, I conclude that the word “mistake” in N.J.S.A. 54:4-54 refers to a mistake of fact not a mistake of law. Here, if the taxes in dispute were paid “by mistake,” the mistake was a mistake of fact relating to ownership of the Street Lots. As a result, the disputed amount is recoverable if it was paid “by mistake” as contemplated in the Taxpayer Mistake Provisions.
Just as payment of a tax with the belief that the law imposing it is not valid does not constitute payment under a mistake of law, payment of a tax with the belief that the tax is not due does not constitute payment under a mistake of fact. Consequently, relief is available under the Taxpayer Mistake Provisions of N.J.S.A. 54:4-54 only when taxes are paid by a taxpayer who, at the time of payment, reasonably believes they are due because: 1) the taxpayer is unaware that an assessment on property of another is included in the assessment on the taxpayer’s property (as occurred in McShain, supra,); or 2) the taxpayer lacks knowledge of facts providing a plausible basis for disputing the taxpayer’s ownership of the property subject to tax. The mistake contemplated by the statute cannot be simply an incorrect interpretation of, or erroneous action taken on the basis of, facts known to the taxpayer which provided a plausible basis for disputing ownership. If a taxpayer has doubts as to the ownership of property assessed to the taxpayer, the proper remedy is to file a *432 tax appeal pursuant to N.J.S.A. 54:3-21 or N.J.S.A 54:51A-1, or file a declaratory judgment action. The taxpayer may not simply pay the taxes as assessed, seek no current judicial resolution of the ownership issue, and, years later, seek relief under N.J.S.A. 54:4-54.
The Taxpayer Mistake Provisions expand a taxpayer’s remedies beyond the normal right to file a tax appeal. Any such expansion should be construed narrowly, particularly when the statute providing the additional remedy contains no limitations period. See McShain v. Evesham Tp., supra, 163 N.J.Super. at 528-29, 395 A.2d 251 (discussing what limitations period, if any, is applicable under N.J.S.A. 54:4-54). In Hovbilt, Inc. v. Howell Tp., 138 N.J. 598, 651 A.2d 77 (1994), the Supreme Court expanded the definition of “mistakes in assessment” by a tax assessor which can be corrected under N.J.S.A. 54:51A-7 (which contains a three year statute of limitations) but “endorse[d] the concerns reflected by the decisions that construe restrictively the scope of the Correction of Errors statute.” Id. at 617, 651 A.2d 77. These concerns are reflected and addressed in the test set forth above for relief under the Taxpayer Mistake Provisions. The test relegates the Provisions to their proper role of providing a remedy in addition to the normal tax appeal process only in situations where a taxpayer had no reasonable factual basis to pursue a regular appeal or institute a declaratory judgment action to resolve an ownership issue.
Based on the preceding discussion, I conclude that none of the payments of taxes and interest made by WEA and plaintiff were made “by mistake” under N.J.S.A. 54:4-54. When WEA and plaintiff elected to make the payments, each had knowledge of facts relating to ownership of the Street Lots, which provided a plausible basis for contesting the obligation to pay. Without explanation, neither sought a judicial determination of the ownership issue until plaintiff instituted this litigation approximately eleven years after the issue arose. To the extent plaintiff, as assignee of WEA, seeks recovery of WEA’s payments of taxes and interest, plaintiff is chargeable with, and bound by, WEA’s knowl *433 edge at the time it made the payments, and WEA’s failure to contest its obligation to pay the taxes and interest now in dispute.
WEA not only failed to contest the ownership issue, but also ■willingly accepted tax obligations as to the Street Lots. In settling the tax appeals it filed for 1988, 1989, 1990 and 1993 (which could have provided an opportunity to resolve the ownership issue), WEA agreed to an allocation of substantial assessments to the Street Lots. This agreement was consistent with WEA’s inclusion of Street Lots in its application for site plan approval, and the settlement agreement and application confirm that WEA did not pay taxes “by mistake.” As WEA’s assignee, plaintiff is chargeable with, and bound by, the import of WEA’s acceptance of tax obligations as to the Street Lots and inclusion of the Lots in WEA’s site plan approval application.
That WEA and plaintiff knew of the ownership issue and nevertheless elected to pay the taxes and interest in dispute was evident from the testimony of Matthew Burns, a principal of, and attorney for, WEA (notwithstanding his disclaimer of such knowledge in a March 16, 1999 letter to defendant’s Law Department), and is demonstrated by the following:
1. A letter dated May 5, 1987 from Mr. Burns to the Jersey City Director of Traffic Engineering in which Mi-. Bums states: “Iwje are aware that the portion of Essex Street between Washington-Warren Streets reverts back to Jersey City upon the closing of the Onyx plant.”
2. A letter dated May 12, 1987 from Mr. Burns to Thomas Fodice, Esq., the Jersey City Corporation Counsel, which states that WEA had no dispute as to Jersey City’s position set forth in a May 4, 1987 letter from Mr. Fodice, which stated that “the 1976 ordinance clearly provides that the street reverts to public use once Onyx closes its plant.” Mr. Bums requested deferral of the reopening of Essex Street pending removal of the existing plant buildings and completion of environmental cleanup.
2 A letter (quoted above) dated August 7, 1989 from Mr. Bums to the auditor for Jersey City setting forth WEA’s position that “neither of [the Street Lots] should be assessed at all” although they were under appeal, because these Lots “are now part of the re-opened Essex Street, which was vacated by 1972[sic] ordinance which provided that the street was re-opened upon the activities of Millmaster ceasing.”
4. The lax appeals filed on behalf of WEA for 1988, 1989 and 1990 which included the Street Lots, particularly the 1990 appeal, resulted in cancellation by the Hudson County Board of 'Taxation of the assessments on the Street Lots, coupled with the Stipulations of Settlement of the appeals, which allocated a *434 portion of the assessment for each of the years 1988 through 1992 to the Street Lots.
5. A letter dated July 30, 1999 from plaintiffs attorneys to defendant’s tax collector remitting payment of $24,169.88 to redeem the June 24, 1999 tax sale certificates with respect to the Street Lots and stating that payment was being made under protest and without prejudice to plaintiffs right to seek a refund “as a result of the ownership issues relating to the Essex Street Property.”
The fact that WEA’s redemption of tax sale certificates was necessary in order to convey clear title to plaintiff does not dimmish the significance of WEA’s and plaintiffs knowledge as to the ownership issue, nor does the fact that plaintiffs redemption of tax sale certificates was necessary in order to convey clear title to TCR Jersey City I, LLC. WEA and plaintiff each had adequate opportunity to obtain judicial resolution of the status of title to the Street Lots before agreeing to sell. The exigency of redemption of tax sale certificates in order to convey title was self-imposed, and, therefore, the tax and interest payments were voluntary for purposes of deciding plaintiffs right to recover the payments. When a payment is made voluntarily, it “cannot be recovered on the ground [that] there was no liability to pay in the first instance.” Ross Systems v. Linden Dari-Delite, Inc., 35 N.J. 329, 334, 173 A.2d 258 (1961) (citations omitted). A payment is not voluntary only if “induced by the wrongful pressure of the payee and the payor has no immediate and adequate remedy in the courts to resist [the payment].” Id. at 335, 173 A.2d 258 (citations omitted). As discussed above WEA and plaintiff had such a remedy available to them.
That defendant’s tax assessor mistakenly assessed the Street Lots to WEA, and then to plaintiff, also does not dimmish the significance of WEA’s and plaintiffs knowledge as to the ownership issue. The mistake to which the Taxpayer Mistake Provisions of N.J.S.A. 54:4-54 refer is the mistake of the taxpayer, not that of the tax assessor or municipality. This is evident from the statutory description of a mistaken payment by one taxpayer on property of another “supposing it to be his own.”
Denying plaintiff relief under the circumstances before the court might appear to result in a windfall to defendant by allowing it to retain taxes it collected from thud parties on property defendant *435 owned. However, based on the following four analyses, I conclude that my decision produces no windfall. First, as discussed above, WEA settled the tax appeals which it filed for 1988, 1989, 1990 and 1993 by allocating the settlement among the various tax lots under appeal, including the Street Lots, even though, at the time of the settlement, WEA claimed the Street Lots were not assessable to it. WEA filed no appeals after 1993. Plaintiff acquired title to the Onyx Property and Street Lots approximately seven months before the April 1, 1999 filing deadline for 1999 appeals, but filed no 1999 appeal. This litigation is the first and only post-1993 challenge to the accessibility of the Street Lots. Under these circumstances, I infer that (i) the settlement for the years 1988 through 1993 (the Freeze Act was applied for 1990 and 1991) was an agreement as to the aggregate assessable value of the economic unit that WEA owned, and (ii) WEA accepted the allocation of assessments to the Street Lots because WEA found the aggregate settlement assessment on the economic unit to be satisfactory whether or not the Street Lots were included. Cf. Mobil Oil Corp. v. Greenwich Tp., 9 N.J. Tax 123, 127 (Tax 1986) (commenting that allocations of assessments among properties compiising a single economic unit “are usually arbitrary” and that “the correct assessment is to be based on the total value of the entire complex”). Therefore, denying plaintiff relief does not result in a windfall to defendant because defendant is retaining taxes that WEA, in effect, agreed to pay based on the assessable value of the Onyx Property alone, without the Street Lots.
Second, having agreed to assessments on the Street Lots as part of the settlement covering its 1988 through 1993 appeals, WEA could not now attack the settlement. Plaintiff; as WEA’s successor-in-title and assignee, has no greater rights or claims. “Barring proof of fraud or other compelling circumstances a settlement will be enforced in accordance with its essential terms.” Liva Group, L.L.C. v. Paramus Bor., 17 N.J. Tax 609, 611 (App.Div.1998) (citation omitted). Plaintiff has not even alleged fraud in connection with the settlement, and has failed to show’ any compelling circumstances. For the reasons discussed above, the *436 “mistake” asserted by plaintiff does not constitute a compelling circumstance.
Third, plaintiff’s effort to undo the settlement represents a violation of the doctrine of judicial estoppel. The stipulation of settlement signed by WEA covering 1988 through 1992, which included assessments on the Street Lots, resulted in the issuance of Tax Court judgments. In addition, WEA requested the Hudson County Board of Taxation to issue judgments for 1993 reflecting settlement terms as to the Street Lots and the other lots under appeal, and the Board did so. Plaintiff, as WEA’s successor-in-title and assignee, is estopped from now taking the position that the Street Lots were not assessable to WEA and should not have been included in the Tax Court and County Board judgments. “Judicial estoppel is an equitable doctrine precluding a party from asserting a position in a case that contradicts or is inconsistent with a position previously asserted by the party in the case or a related legal proceeding.” Tamburelli Properties Ass’n. v. Cresskill Bor., 308 N.J.Super. 326, 335, 705 A.2d 1270 (App.Div. 1998). This litigation and the earlier tax appeals are related legal proceedings for purposes of judicial estoppel, and plaintiff may not now contradict what its assignor agreed to years ago.
Fourth, denying plaintiff relief is consistent with decisions in other contexts which permit municipalities to retain taxes and other monies which should not have been collected. For example, whenever a taxpayer whose property is over-assessed fails to appeal the assessment in a timely manner, the municipality retains the excess tax payments. See, e.g., Royal Bradley Assocs. v. Bradley Beach Bor., 252 N.J.Super. 401, 599 A.2d 1288 (App.Div.1991) (affirming the Tax Court’s granting of a motion for summary judgment dismissing an untimely appeal of an added assessment, where the plaintiffs alleged the assessment was invalid and void ab initio). In addition, as set forth above, a taxpayer cannot recover taxes paid under a statute which the taxpayer believes to be valid at the time of payment, but which is later declared unconstitutional. Continental Trailways, Inc. v. Director, Div. of Motor Vehicles, supra, 102 N.J. 526, 509 A.2d 769. *437 Furthermore, a party paying municipal fees which are adjudged unlawful is not always entitled to a refund. In Garvey v. Wall Tp., 303 N.J.Super. 93, 696 A.2d 71 (App.Div.1997), the court held that “[ejven when a court determines that a municipality has charged excessive or discriminatory fees to users of municipal services, ... the scope of any monetary award depends on equitable considerations, including any delay in the initiation of proceedings to challenge the municipal action and the fiscal impact upon the municipality of a monetary award.” Id. at 104, 696 A.2d 71. The Supreme Court, in Neptune City Bor. v. Avon-by-the-Sea Bor., 61 N.J. 296, 294 A.2d 47 (1972), applied prospectively only its decision declaring that beach access fees imposed by Avon discriminated against non-residents and, therefore, were collected unlawfully.
Judgment will be entered in favor of defendant, denying recovery of the sum of $492,741.06 claimed by plaintiff.